367 So.2d 613 (1979)
CASTLEWOOD INTERNATIONAL CORPORATION, etc., Appellant,
v.
William SIMON et al., Appellees.
No. 53146.
Supreme Court of Florida.
January 11, 1979.
Rehearing Denied March 12, 1979.
Tobias Simon, Jennifer Hurst and Theodore L. Tripp, Jr. of the Law Offices of Tobias Simon, Miami, for appellant.
J.B. Eskenazi, U.S. Atty. and Lloyd G. Bates, Asst. U.S. Atty., Miami, and Ronald E. Williams, Office of Chief Counsel, Bureau of Alcohol, Tobacco and Firearms, Washington, D.C., for appellees.
Cynthia S. Tunnicliff of Spector & Tunnicliff, Tallahassee, for Distilled Spirits Wholesalers of Florida, Inc., amicus curiae.
Wilbur E. Brewton and J. Riley Davis of Taylor, Brion, Buker & Greene, Tallahassee, for Wine Industry of Florida, Inc., amicus curiae.
ENGLAND, Chief Justice.
This case comes to us by certification from the Fifth Circuit Court of Appeals, asking for an interpretation of the financial restrictions imposed by Florida law on transactions between wholesalers and retailers of alcoholic beverages. Critical to our answer are the history of Florida's regulatory provisions on the subject and a comparison with comparable features of the federal regulatory scheme.
Pursuant to the authority reserved to the several states by the twenty-first amendment to the United States Constitution,[1] Florida has adopted a comprehensive regulatory scheme to control the distribution and sale of intoxicating liquors within this *614 state.[2] A dominant feature of Florida's regulatory scheme is the establishment of three independent tiers of private entities concerned with the distribution and sale of intoxicating liquors in the state  distillers, wholesalers, and retailers.[3] Since 1935, when Florida enacted a counterpart of the federal Tied House Evil Statute,[4] this state has prohibited distillers and wholesalers of intoxicating liquors from offering financial assistance to retailers.[5]
Both the state Tied House Evil Law and a rule promulgated by the Treasury Department under the federal statute allow one form of inter-tier financial assistance  trade discounts from wholesalers to retailers "in the usual course of business."[6] Florida and federal law differ, however, as to what that terminology permits. At the present time, federal regulations allow discounts only to the extent that volume purchases bear a reasonable relationship to the savings in cost which accrue to the wholesaler, and they prohibit any transaction in which the discount would result in a sales price below the wholesaler's "laid-in cost."[7] Florida's statute authorizes trade discounts in cash, if given simultaneously at the time of sale to all retailers buying similar quantities, without any mention of a required relationship between discount and savings, or of a "floor" on discounts.[8] This difference between Florida and federal law precipitated this lawsuit, raising the question of whether Florida's liquor wholesalers must conform their price schedules to meet the requirements of the federal regulatory scheme.
Castlewood International Corporation is a retail vendor of alcoholic beverages in Florida, licensed under Chapter 561, Florida Statutes (1977). It brought an action in the United States District Court for the Southern District of Florida, seeking declaratory and injunctive relief against the enforcement in Florida of the federal regulations. Castlewood argued, essentially, that Florida is free to adopt a regulatory scheme for the control of intoxicating liquors which is different from the federal scheme; that the state has broad discretion to control or limit financial assistance between tiers in the liquor distribution chain; that the state may elect to place a "floor" on inter-tier discounts or require a cost-savings relationship, but it may also elect "equality among purchasers" as a mechanism of control; and that since 1963 Florida has elected the latter, allegedly more competitive, method for this state.
The federal district court rejected Castlewood's contentions and entered judgment for defendants, the Secretary of the Treasury and the Director of the Bureau of Alcohol, Tobacco and Firearms.[9] On appeal, the United States Court of Appeals for the Fifth Circuit certified the following question to us pursuant to Florida Appellate Rule 4.61:[10]
Whether, under Florida's comprehensive regulatory scheme for the alcoholic beverage industry, prices charged by wholesalers *615 to retailers must bear some relationship to, and be at least equal to, laid-in cost, or whether a wholesaler may sell to a retailer at any price, regardless of laid-in cost, provided only that all discounts are given at the time of sale and the same discount is available to all purchasers of similar quantities of alcoholic beverages.[11]
We hold that under Florida law a wholesaler may sell to a retailer on the basis of a discount given at the time of sale and made available to all vendors buying similar quantities, regardless of laid-in cost or the savings attributable to quantity sales.
Before 1963, a "discount in the usual course of business" was defined by Section 561.01(13), Florida Statutes (1961), to mean
a cash discount given simultaneously at the time of sale, which shall not exceed the allowable discount fixed by the director [of the state beverage department].
In that year the authority of the director was replaced with a statutory prescription for unregulated equality among purchasers, the provision now found in Section 561.01(10), Florida Statutes (1977).[12]
In 1973, the Board of Business Regulation asked the Attorney General precisely the same question regarding the effect of the 1963 amendment which the Fifth Circuit has now certified to us. We cannot improve on the Attorney General's answer, which has continuing vitality under the statute as it presently exists.
The terms of the amendment are unambiguous and the legislative intent is clear. The criterion based upon the size of the discount was removed from the definition and the concomitant authority of the director to adopt rules setting the size of the allowable discount was withdrawn. In lieu thereof, the legislature adopted a new, self-executing criterion. The size of the discount is no longer a factor. So long as it is a cash discount given simultaneously at the time of sale and so long as the same discount is offered to all vendors buying similar quantities, it is a discount in the usual course of business and thus exempted from § 561.42 by subsection (6). Under the amended section, it is a violation of "this section" rather than a rule which is considered an arrangement for financial assistance or gift. This change reflected an apparent legislative recognition that major discounts result in lower prices to the consumer, as well as a desire by the legislature to require equality in the treatment of retailers, as an alternative to price fixing by the division.[13]
There is no other administrative or judicial interpretation of the statute in Florida, although there is a sentence in a 1971 decision of the First District Court of Appeal which, contrary to the Attorney General's opinion, states that a reasonable relationship to cost savings is required under the amended discount statute.[14] This statement in that opinion was obviously gratuitous, as the subject of the present controversy was neither argued nor briefed by the parties there and was irrelevant to the point of law involved in that proceeding.[15] We now hold that the 1973 opinion of the Attorney General accurately reflects the intent of the legislature and the law of this state with respect to discounts offered by wholesalers of wines and liquors.
*616 The appellees and amici[16] argue forcefully that the interpretation we have now adopted will enable those retailers who are licensed to sell liquor at multiple locations to obtain a favorable competitive position over individual businesses, since as a practical matter the latter will be unable to take advantage of the discounts offered on large volume orders.[17] They suggest that unless a cost-relationship requirement is incorporated into the statute, individual retailers will ultimately be driven out of business and wholesalers will be at the mercy of the large, multi-outlet vendors. To sustain this position, they urge that we look not only to the object and intent of the beverage law, but beyond to general state and federal legislation aimed at preventing unfair trade practices.
We have often said that the courts will not substitute what is perceived to be a more desirable or harmonious policy for a clear and unambiguous legislative directive. See, for example, Heredia v. Allstate Insurance Company, 358 So.2d 1353, 1355 (Fla. 1978). That doctrine of judicial restraint is directly applicable here.[18] Appellees' concerns regarding monopolistic practices go not to the meaning, but to the wisdom of the provisions in question  a matter which is irrelevant to our inquiry.[19]
For the reasons expressed, the question certified by the Fifth Circuit Court of Appeals is resolved in accordance with this opinion.
BOYD, OVERTON and HATCHETT, JJ., concur.
ADKINS, J., concurs in result only.
NOTES
[1] U.S.Const. amend. XXI, § 2 provides: "The transportation or importation into any State ... for delivery or use therein of intoxicating liquors in violation of the laws thereof, is hereby prohibited."
[2] Title 32, Fla. Stat. (1977).
[3] § 561.14, Fla. Stat. (1977). A fourth class  exporters  is strictly prohibited from engaging in any in-state liquor business, see Division of Beverage v. Bonanni Ship Supply, Inc., 356 So.2d 308 (Fla. 1978), and therefore is unaffected by the present controversy.
[4] See 27 U.S.C. § 205(b) (1976).
[5] The present prohibition is found in § 561.42(1), Fla. Stat. (1977), which provides:

No licensed manufacturer or distributor of [alcoholic beverages] shall ... assist any vendor by any gifts or loans of money or property of any description or by the giving of any rebates of any kind whatsoever.
[6] § 561.42(6), Fla. Stat. (1977); Rev.Rul. 161, 1954-1 C.B. 338.
[7] See Bureau of Alcohol, Tobacco and Firearms Rulings 74-6 and 75-5.
[8] § 561.01(10), Fla. Stat. (1977), defines a "discount in the usual course of business" to mean

a cash discount given simultaneously at the time of sale. The same discounts shall be offered to all vendors buying similar quantities.
[9] Castlewood International Corp. v. Simon, 404 F. Supp. 88 (S.D.Fla. 1975).
[10] This rule now appears as Florida Rule of Appellate Procedure 9.510 (1977). See also § 25.031, Fla. Stat. (1977).
[11] Castlewood International Corp. v. Simon, 564 F.2d 695, 698 (5th Cir.1977).
[12] Ch. 63-32, § 1, Laws of Fla.
[13] 1973 Op.Att'y Gen. Fla. 073-196 (June 1, 1973). This construction of the statute has been accepted by the Department of Business Regulation, which in 1976 promulgated an administrative rule embodying the same limited test. See Fla. Admin. Code Rule 7A-4.461.
[14] Musleh v. Fulton Distributing Co., 254 So.2d 815, 818-19 (Fla. 1st DCA 1971).
[15] Both the rule and statute which authorize our acceptance of certified questions from federal appellate courts specifically provide that we may only address issues for which "there are no clear controlling precedents in the decisions of the [Florida] Supreme Court." This case proves the wisdom of that limitation. The Fifth Circuit recognized the significance of this condition, having declined to accept Musleh as controlling authority. 564 F.2d at 696 n. 1.
[16] Distilled Spirits Wholesalers of Florida, Inc. and Wine Industry of Florida, Inc.
[17] This may or may not occur. The Division of Beverage, undoubtedly in recognition of this potential inequity, has promulgated a rule establishing a method by which two or more licensed vendors may "pool" their purchases from a distributor in order to obtain the large volume discounts which might otherwise be available only to multi-outlet retailers. Fla. Admin. Code Rule 7A-4.50.
[18] In passing we note that the federal government did not place any limit on distributors' discounts under the federal Tied House Evil Statute for the period between 1935 and 1974. The fact that the federal government has now altered its policy is not a persuasive reason to incorporate its current view into the comparable Florida statute.
[19] E.g., Stern v. Miller, 348 So.2d 303, 307 (Fla. 1977); State v. Reese, 222 So.2d 732, 736 (Fla. 1969); Overstreet v. Bishop, 343 So.2d 958, 961 (Fla. 1st DCA 1977).