648 So.2d 705 (1995)
Barbara A. SAVONA, Appellant,
v.
PRUDENTIAL INSURANCE COMPANY OF AMERICA, Appellee.
No. 82933.
Supreme Court of Florida.
January 5, 1995.
Charles E. Davis, Charles E. Davis, P.A., Orlando, for appellant.
Melissa Arony and Sutton G. Hilyard, Jr., Eubanks, Hilyard, Rumbley, Meier & Lengauer, P.A., Orlando, for appellee.
WELLS, Justice.
We have for review a question certified from the United States Court of Appeals for *706 the Eleventh Circuit which is determinative of a cause pending in the federal courts and for which there appears to be no clear, controlling precedent from this Court:
WHETHER UNDER FLA. STAT. ANN. § 627.6675, A CONVERSION INSURANCE POLICY MUST PROVIDE BENEFITS EQUAL TO THOSE PROVIDED UNDER THE ORIGINAL GROUP INSURANCE POLICY.
Savona v. Prudential Insurance Company of America, No. 93-2281, slip op. at 7 (11th Cir. December 27, 1993). We have jurisdiction pursuant to article V, section 3(b)(6) of the Florida Constitution, and we answer the question in the negative.
Barbara A. Savona was involved in an automobile accident that rendered her totally disabled. At the time of the accident, she was employed by Hotel Royal Plaza which provided her with major medical health insurance under a group policy issued by Prudential Insurance Company of America. The group policy provided for aggregate lifetime health insurance benefits of $1,000,000. In the event Savona was terminated, the group policy also provided that she could convert the group policy to an individual expense health insurance policy, but only for the minimum maximum payment required by Florida law. Section 627.6675, Florida Statutes (1987), required the availability of the converted policy and stated with respect to the maximum payment amount of the converted policy that:
Subject to the provisions and conditions of this part, if the group insurance policy from which conversion is made insures the employee or member for major medical expense insurance, the employee or member shall be entitled to obtain a converted policy providing catastrophic or major medical coverage under a plan meeting the following requirements:
(a) A maximum benefit at least equal to either, at the option of the insurer, the amount specified in subparagraph 1. or subparagraph 2.
1. The smaller of the following amounts:
a. The maximum benefit provided under the group policy.
b. A maximum payment of $250,000 per covered person for all covered medical expenses incurred during the covered persons's lifetime.
2. The smaller of the following amounts:
a. The maximum benefit provided under the group policy.
b. A maximum payment of $250,000 for each unrelated injury or sickness.
§ 627.6675(11), Fla. Stat. (1987).
Hotel Royal terminated Savona as a result of her total disability. Savona's group coverage was then canceled pursuant to the terms of her policy, and she elected to convert to an individual policy. The individual policy only provided maximum lifetime health insurance benefits of $250,000. After exhausting the full $250,000, Savona filed suit in state court seeking a declaratory judgment that, pursuant to the decisions in Northbrook Life Insurance Co. v. Clark, 582 So.2d 1199 (Fla. 2d DCA 1991), and Blue Cross/Blue Shield v. Shufelt, 487 So.2d 1085 (Fla. 5th DCA 1986), she was entitled to a individual conversion policy with the same $1,000,000 coverage as the original group policy.
Prudential removed the case to the United States District Court for the Middle District of Florida on the grounds that Savona's policy fell within the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 et seq., and her claim, therefore, presented a federal question. See 29 U.S.C. § 1132 (a)(1)(B) and (e); 28 U.S.C. § 1441. The federal court, however, decided the case on state grounds. The court concluded that the language of section 627.6675, as well as the legislative intent as evidenced by subsequent amendments to the statute, permitted coverage of a lesser amount in the individual conversion policy. The court also noted that the interpretations of section 627.6675 provided in Shufelt and Clark conflicted with the plain language of the statute and, thus, declined to follow these cases. On appeal, the Eleventh Circuit found that the case presented an issue of Florida law and certified the question for resolution by this Court.
*707 Prudential urges this Court to conduct a de novo review and address its claim that ERISA rather than section 627.6675 should control the outcome of this case. In particular, Prudential alleges that Savona's insurance policy was an employee benefit plan as defined in 29 U.S.C. § 1002(1) and, therefore, should be regulated by ERISA rather than Florida law. However, neither the federal district court nor circuit court addressed this issue, and we decline to address it in this proceeding. We have held that we have the authority to consider issues other than those upon which jurisdiction is based, but this authority is discretionary and should be exercised only when these other issues have been properly briefed and argued, and are dispositive of the case. Savoie v. State, 422 So.2d 308 (Fla. 1982). Such is not the case here, and we, therefore, limit our review to the certified question.
The question presented requires us to interpret section 627.6675, Florida Statutes (1987). This section expressly affords the insurer the option of providing a maximum conversion policy benefit of the smaller of $250,000 or the group policy limits. § 627.6675(11), Fla. Stat. When the language of a statute is clear and unambiguous, as is the case here, the statute must be given its plain and ordinary meaning. Polakoff Bail Bonds v. Orange County, 634 So.2d 1083, 1084 (Fla. 1994); In re McCollam, 612 So.2d 572, 573 (Fla. 1993). Because the language of the statute is clear, we do not look beyond it to discern legislative intent. City of Miami Beach v. Galbut, 626 So.2d 192 (Fla. 1993); McCollam, 612 So.2d at 573; Streeter v. Sullivan, 509 So.2d 268, 271 (Fla. 1987); Holly v. Auld, 450 So.2d 217, 219 (Fla. 1984). Accordingly, we reject Savona's contention that the context of section 627.6675 should yield to the legislative intent as evidenced by subsequent amendments to the statute.[1] We do not address these amendments due to our conclusion that the statute has a plain and discernible meaning.
Furthermore, any case that interprets section 627.6675 as requiring a conversion policy with limits equal to those of the original group policy erroneously abrogates legislative power. We have recognized that
the courts of this state are "without power to construe an unambiguous statute in a way which would extend, modify, or limit, its express terms or its reasonable and obvious implications. To do so would be an abrogation of legislative power."
Holly, 450 So.2d at 219 (quoting American Bankers Life Assurance Co. v. Williams, 212 So.2d 777, 778 (Fla. 1st DCA 1968) (emphasis added)). Accordingly, we decline to follow the Fifth District's holding in Shufelt that "section 627.6675 should be construed to require that every `converted policy' contain coverage and benefits to the employee comparable to the coverage and benefits the employee had under the group policy which *708 the `converted policy' replaces." 487 So.2d at 1087. That holding is in direct conflict with the language of the statute, and the federal district court was, therefore, correct in declining to accept Shufelt as controlling authority. See Castlewood Int'l Corp. v. Simon, 367 So.2d 613, 615 n. 15 (Fla. 1979).
We find, however, that the Second District's opinion in Clark is consistent with our holding in this case. The court's conclusion in Clark that the terminated employee was entitled to a converted policy providing a maximum payment amount equal to those in which the group coverage provided was based on the language in the terminated policy rather than section 627.6675. The district court correctly concluded that section 627.6675 establishes the minimum criteria a converted policy must meet. The terminated policy in the instant case, unlike the policy in Clark, only required a conversion to a maximum payment in the minimum amount allowed by Florida law and, therefore, is not subject to challenge.
We recognize that the result in this case appears inequitable, but we cannot substitute what we perceive to be a more desirable policy for a clear and unambiguous legislative directive. Castlewood, 367 So.2d at 616. Although we must adhere to the statute's plain meaning in this case, the factual circumstances presented clearly illustrate the hardship which can result from the application of the statute to persons who must convert their insurance coverage in our state.[2] We request that our Legislature reconsider this very real problem.
Having answered the certified question, we return this case to the United States Court of Appeals for the Eleventh Circuit for disposition.
It is so ordered.
GRIMES, C.J., and SHAW, KOGAN, HARDING and ANSTEAD, JJ., concur.
OVERTON, J., concurs with an opinion, in which KOGAN, J., concurs.
OVERTON, Justice, concurring.
I write only to strongly emphasize that the legislature needs to address the totally inequitable and unjust result reached in this case. Obviously, employees obtain major medical coverage to protect against a catastrophic injury or disease. Under the current statute, however, employees can have full coverage when they are employed and are healthy, but not have full coverage when they experience a catastrophic injury or illness and are discharged because they cannot work. Importantly, the facts in this case illustrate this problem. At the time the employee in this case suffered her catastrophic injury, she was employed with the full $1,000,000 coverage in force. Unfortunately, when she was discharged because she was unable to work, the conversion contract and statutory provisions allowed a reduction of that coverage to $250,000 even though the injury occurred when she had the full $1,000,000 coverage. Ironically, such a catastrophic injury or illness is the very thing employees seek to protect against in obtaining coverage. Such a situation leads employees to believe they are fully protected when, in fact, once they are injured and discharged from work, they find they are not.
While I fully agree with the majority's conclusion that the law as it now exists requires a denial of the full $1,000,000 coverage *709 in this case, this kind of insurance coverage sleight-of-hand is why many members of the public are upset with the health care system and why this situation should be corrected by the legislature.
KOGAN, J., concurs.
NOTES
[1] Section 627.6675(20) was added in March 1992 and reads as follows:

Nothing in this section or in the incorporation of it into insurance policies shall be construed to require insurers to provide benefits equal to those provided in the group policy from which the individual converted. Further, the legislature finds and declares that this subsection is a clarification and specification of the legislative intent of this section prior to the enactment; and that in light of confusion relating to the rights and obligations of insurers and insureds resulting from judicial and administrative interpretations of this section, the state has great interest in giving retrospective intent to this clarification. The Legislature therefore intends that this section be given such retrospective effect as is necessary to clarify that it does not, and did not before this enactment, require the issuance of conversion policies providing benefits equal to those provided in the group policy from which the individual converted.
Ch. 92-33, § 138, at 376, Laws of Fla. (emphasis added). Before the amendment became effective, however, the underlined portion was deleted and replaced with the following language:
provided, however, that comprehensive benefits are offered which shall be subject to approval by the Insurance Commissioner.
Ch. 92-318, § 116, at 3178, Laws of Fla. Savona contends this deletion indicates that the Legislature intended the amendment to have prospective effect only, and that prior to the amendment, Savona was entitled to a conversion policy with benefits equal to the group policy pursuant to existing case law. Prudential contends the amendments were an attempt by the Legislature to change prior case law on the issue and that they clearly indicate that the conversion policy need not provide benefits equal to those of the converted policy.
[2] Section 627.6675 currently permits the employer and/or insurer, through a conversion policy, to decrease the benefits of a totally disabled employee after the person becomes totally disabled. Obviously, the employee needs the benefits as much, and in most instances more, than an injured employee who can continue to work and receive benefits under the group policy. See Shufelt, 487 So.2d at 1087.

The statute presently requires the converted policy to have a minimum maximum payment of $500,000 rather than $250,000. Still, it is patently an errant plan which allows the maximum protection to be reduced after the employee has incurred an illness or injury which will produce expenses up to the amount of the maximum payment existing at the time the illness or injury is incurred. This could be avoided, if the statute mandated, in the extension of benefits provision of section 627.6675, that benefits be extended up to the existing maximum amount of a policy for the treatment of a specific accident or illness incurred while the policy was in effect, thereby eliminating the 12-month limitation of that section.