[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

---------------------------------------

No. 99-13730

---------------------------------------

D. C. Docket No. 98-08054-CV-KLR

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 01, 2001
THOMAS K. KAHN
CLERK

RICHARD WARNER,
MIRIAM WARNER, et al.

Plaintiffs-Appellants,

versus

CITY OF BOCA RATON,

Defendant-Appellee.

------------------------------------------------------------------
Appeal from the United States District Court
for the Southern District of Florida
------------------------------------------------------------------

**(October 1, 2001)**

Before EDMONDSON, DUBINA and POLITZ*, Circuit Judges.

_____

• Honorable Henry A. Politz, U.S. Circuit Judge for the Fifth Circuit, sitting by
designation.

PER CURIAM:

In this case, we review the district court's dismissal of federal and state law claims involving a city's enforcement of cemetery regulations. Before ruling on the state law claims, we will ask the Florida Supreme Court for some advice about Florida law. Because it is possible that after we hear from the Florida Supreme Court, we will determine that the City's regulations violate state law and will have no reason to reach the federal questions, we decide nothing today. Instead, we certify some questions to Florida's highest court.

## I. Background

Defendant-city, Boca Raton ("City") owns, operates, and maintains a cemetery for its residents. In 1982, the City passed a regulation prohibiting vertical grave markers, memorials, monuments, and other structures (collectively, "grave decorations").

Class plaintiffs ("Plaintiffs") are city residents who purchased burial plots in the City's cemetery. Plaintiffs desire to place vertical grave decorations on their cemetery plots to observe sincerely held religious beliefs. Despite the prohibitive

regulation, some plaintiffs, between 1984 and 1996, decorated family graves with vertical grave decorations.

In 1991, the City notified plot owners who had placed vertical grave decorations at their plots that, if the plot owners did not remove the vertical decorations, then the City would remove the noncomplying structures. Not all plot owners removed their vertical grave decorations. A similar notice was sent in 1992; and again, some vertical grave decorations remained.

In response to objections from plot owners, the City Counsel postponed the removal of noncomplying structures and ordered a study to reevaluate the ordinance. Meanwhile, in 1996, the City amended the pertinent regulation to permit some vertical grave decorations up to 60 days from the date of burial and on certain holidays.

A study by researchers at Florida Atlantic University in 1997 concluded that most plot owners approved of the vertical grave decoration regulation, as amended in 1996. The City then announced its intention to begin enforcing the regulation as amended in 1996. All cemetery plot decorations had to be brought into compliance by 15 January 1998. Plaintiffs later filed this lawsuit.

Plaintiffs allege that the prohibition on vertical grave decorations violates the Florida Religious Freedom Restoration Act of 1998, Fla. Stat. § 761.01

("Florida RFRA"), and state and federal constitutional protections for freedom of religious expression, freedom of speech, and due process of law. After a bench trial, the district court concluded that the prohibition violates no federal or state rights as alleged by Plaintiffs.[1] Plaintiffs timely appealed.

## II. The State Law Claims

In the wake of the United States Supreme Court's decision, <u>City of Boerne v. Flores</u>, 117 S. Ct. 2157 (1997), the State of Florida passed the Florida RFRA. The Florida RFRA statute provides that:

(1) The government shall not substantially burden a person's exercise of religion, even if the burden results from a rule of general applicability, except that government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person: (a) Is in furtherance of a compelling governmental interest; and (b) Is the least restrictive means of furthering that compelling governmental interest.

Fla. Stat. § 761.03. Florida RFRA goes on to define "exercise of religion" as "an act or refusal to act that is substantially motivated by a religious belief, whether or

---

[1] The district court also concluded that a separate regulation granting the cemetery manager discretion to make temporary exceptions and modifications to the prohibition on vertical grave decorations violated the federal and state constitutions. The City has not appealed this ruling.

not the religious exercise is compulsory or central to a larger system of religious belief." Fla. Stat. § 761.02(3).

In this case, the federal district court, which was the first court to issue a published opinion interpreting Florida RFRA,[2] said the state statute applied only to conduct that "reflects some tenet, practice or custom of a larger system of religious beliefs," and not to "conduct that reflects a purely personal preference regarding religious exercise." Warner v. City of Boca Raton, 64 F.Supp.2d 1272, 1283 (S.D. Fla. 1999).

To determine if conduct is a tenet, practice or custom of a larger system of religious beliefs covered by Florida RFRA, the court adopted a four-part test that was suggested by Defendant's expert.

> [A] court should consider whether the practice: 1) is asserted or implied in relatively unambiguous terms by an authoritative sacred text; 2) is clearly and consistently affirmed in classic formulations of doctrine and practice; 3) has been observed continuously, or nearly so, throughout the history of the tradition; and 4) is consistently observed in the tradition as we meet it in recent times. If a practice meets all four of these criteria, it can be considered central to the religious tradition. If the practice meets one or more of these criteria, it can be considered a tenet, custom, or practice of the religious tradition. If the practice meets none of these criteria, it can be

---

[2] As far as we know, no other case, since the district court's opinion, interprets Florida RFRA. Although two recent Florida cases involved Florida RFRA claims, the courts did not engage in analysis of the Florida RFRA or offer guidance about its interpretation. See First Baptist Church of Perrine v. Miami-Dade County, 768 So2d. 1114 (Fla 3rd DCA 2000); Sabir Abdul-Haqq Yasir v. Singletary, 766 So.2d 1197 (Fla. 5th DCA 2000).

considered a matter of purely personal preference regarding religious exercise.

Id. at 1285.

Applying this test, the district court concluded that, while marking graves with religious symbols is a custom or practice of Plaintiffs' religious traditions, maintaining grave markers in a vertical position is merely personal preference and no custom or practice of Plaintiffs' religion.

Plaintiffs argue that the district court's four-part test ignores the plain language in the state statute that the religious exercise need not be "compulsory or central to a larger system of religious belief." Plaintiffs also argue that the district court erred in equating the protection of religious expression afforded by the Florida Constitution to the protection afforded by the United States Constitution. Plaintiffs argue, in effect, that the Florida Constitution requires strict scrutiny of any statute that results in a restriction on religious practice.[3]

What practices amount to religious practice protected by the First Amendment has been a central question in Free Exercise jurisprudence. See, e.g.

---

[3]We doubt this view is correct. We can find no support in Florida law for this contention. Also, the very text of the Florida Constitution suggests that it affords less absolute protection than that provided by the United States Constitution. See Fla. Const. Art. 1 § 3 ("There shall be no law respecting the establishment of religion or prohibiting or penalizing the free exercise thereof. Religious freedom shall not justify practices inconsistent with public morals, peace or safety.")

Wisconsin v. Yoder, 92 S. Ct. 1526, 1534 (1972) (court determined that Amish traditions and culture were so intimately related to their religious beliefs that state law mandating attendance at school until age 16 carried "a very real threat of undermining the Amish community and religious practice as they exist today.") In 1993, Congress passed the Religious Freedom Restoration Act (RFRA), 42 U.S.C. §§ 2000bb, et seq., in direct response to the United States Supreme Court's decision, Employment Div. Dept. of Human Resources of Oregon v. Smith, 110 S. Ct. 1595 (1990). In Smith, the Court had said that neutral laws of general applicability that incidentally conflict with religious practice would not be subject to strict judicial scrutiny. Id. at 1603.

RFRA was designed to require the courts to apply a strict scrutiny test to any law that "substantially burdened" a person's practice of religion. RFRA was invalidated by the Supreme Court's decision in City of Boerne v. Flores, 117 S.Ct. 2157 (1997). Before the Supreme Court ruled in Flores, a number of the circuit courts of appeals had been confronted with deciding what amounted to a substantial burden on religious practice for the purpose of RFRA. The courts of appeals took different approaches to answering this question. See Mack v. O'Leary, 80 F.3d 1175, 1178 (7th Cir. 1996), judgment vacated 118 S. Ct. 36 (1997), (collecting cases). The more restrictive courts suggested that a person's

**7**

exercise of religion would be substantially burdened only if he were prevented from engaging in religiously mandated activity, or required to participate in activity prohibited by his religion. See, e.g. Cheffer v. Reno, 55 F.3d 1517, 1522 (11th Cir. 1995) (no substantial burden when religion did not require particular means of expressing religious view and alternative means of religious expression were available). Other courts have not talked about required acts, but have instead referred to constraints upon "expression that manifests some central tenet of [a person's] individual beliefs" or "meaningfully curtail[ing] [a person's] ability to express adherence to his or her faith" See Werner v. McCotter, 49 F.3d 1476, 1480 (10th Cir. 1995) .

After City of Boerne struck down RFRA, many states passed their own versions of the law. Florida is one of those states. The operative language of the Florida RFRA is virtually identical to the RFRA passed by Congress. But, the Florida RFRA includes a definition of religious practice that appears specifically designed to prohibit the more restrictive definition of "substantially burden" applied by some of the federal courts of appeals to the RFRA passed by Congress.

As the circumstances of this case demonstrate, the breadth of protection afforded by the state of Florida under state law can determine the outcome of this case as well as have wide ranging and profound implications in Florida. We

**8**

therefore certify to the Florida Supreme Court these controlling questions for review:

      1.  Does the Florida Religious Freedom Restoration Act broaden, and to what extent does it broaden, the definition of what constitutes religiously motivated conduct protected by law beyond the conduct considered protected by the decisions of the United States Supreme Court?

      2.  If the Act does broaden the parameters of protected religiously motivated conduct, will a city's neutral, generally-applicable ordinance be subjected to strict scrutiny by the courts when the ordinance prevents persons from acting in conformity with their sincerely held religious beliefs, but the acts the persons wish to take are not 1) asserted or implied in relatively unambiguous terms by an authoritative sacred text, or 2) clearly and consistently affirmed in classic formulations of doctrine and practice, or 3) observed continuously, or nearly so, throughout the history of the religion, or 4) consistently observed in the tradition in recent times?

Our phrasing of the certified questions is meant to restrict, in no way, the Florida Supreme Court's response to the questions or its analysis of the state law questions, including state constitutional questions, posed by this case. We seek clarification (and possibly correction) in the light of what we have written today. We invite a full discussion by the Florida Supreme Court; today's certified questions are just a guide. To assist the Florida Supreme Court – if it decides to accept this

certification – with its consideration of the case, the record and briefs will accompany this certification.

CERTIFIED QUESTIONS.