887 So.2d 1023 (2004)
Richard WARNER, et al., Appellants,
v.
CITY OF BOCA RATON, Florida, Appellee.
No. SC01-2206.
Supreme Court of Florida.
September 2, 2004.
Rehearing Denied November 16, 2004.
*1024 James K. Green and Lynn G. Waxman, West Palm Beach, FL; Charlotte H. Danciu, Boca Raton, FL; and Douglas Laycock, Austin, TX on behalf of American Civil Liberties Union Foundation of Florida, Inc. for Appellant.
Bruce Rogow and Beverly A. Pohl of Bruce S. Rogow, P.A., Fort Lauderdale, FL, for Appellee.
Charles T. Canady, General Counsel, Executive Office of the Governor, Tallahassee, FL, on behalf of Honorable Jeb Bush, Governor of Florida, Amicus Curiae; Mathew D. Staver, Erik W. Stanley and Joel L. Oster, Longwood, FL on behalf of Liberty Counsel, Amicus Curiae.
Rebecca A. O'Hara, Tallahassee, FL on behalf of Florida League of Cities, Inc., Amicus Curiae; and Douglas L. Stowell, Tallahassee, FL on behalf of the International Cemetery and Funeral Association, Amicus Curiae.
QUINCE, J.
We have for review the following two questions concerning Florida law certified by the United States Court of Appeals for the Eleventh Circuit to be determinative of a cause pending in that court and for which there appears to be no controlling precedent:
Does the Florida Religious Freedom Restoration Act Broaden, and to what extent does it broaden, the definition of what constitutes religiously motivated conduct protected by law beyond the conduct considered protected by the decisions of the United States Supreme Court?
If the act does broaden the parameters of protected religiously motivated conduct, will a city's neutral, generally-applicable ordinance be subjected to strict scrutiny by the courts when the ordinance prevents persons from acting in conformity with their sincerely held religious beliefs, but the acts the persons wish to take are not 1) asserted or implied in relatively unambiguous terms by an authoritative sacred text, or 2) clearly and consistently affirmed in classic formulations of doctrine and practice, or 3) *1025 observed continuously, or nearly so, throughout the history of the religion, or 4) consistently observed in the tradition in recent times?
Warner v. City of Boca Raton, 267 F.3d 1223, 1227 (11th Cir.2001). We have jurisdiction. See art. V, § 3(b)(6), Fla. Const. We rephrase[1] the second question as follows:
Whether the City of Boca Raton Ordinance at issue in this case violates the Florida Religious Freedom Restoration Act (FRFRA)?
For the reasons stated below, we answer the first certified question in the affirmative and the second question, as rephrased by this Court, in the negative.

MATERIAL FACTS AND PROCEEDINGS
The City of Boca Raton (the City) owns, operates, and maintains a 21.5 acre cemetery for its residents. In November 1982, the City passed a regulation prohibiting vertical grave markers, memorials, monuments, and structures on cemetery plots. The regulation allows individuals to place stone or bronze markers on plots provided that they are level with the ground surface. Richard Warner is a member of a class of city residents (appellants) who purchased burial plots in the City's cemetery. Despite the prohibition, between 1984 and 1996 appellants decorated family graves with vertical grave decorations.
In 1991, the City sent notices to plot owners who had placed vertical grave decorations at their plots, informing them that if they did not remove the noncomplying structures within thirty days, the structures would be removed. A small group of plot owners failed to comply with the City's request to remove the vertical grave decorations. A second notice was sent in 1992, requesting compliance, and again not all plot owners complied with the City's request. However, in response to objections from plot owners, the City agreed to postpone removal of the noncomplying structures pending further study. In 1996, the City amended the regulation to permit some vertical grave decorations up to sixty days from the date of burial and on certain holidays.
During this time, the City commissioned a survey of plot owners to identify their desires concerning vertical grave decorations in the cemetery. The study, conducted by researchers at Florida Atlantic University in 1997, concluded that most plot owners approved of the City's amended regulation. Subsequently, on June 10, 1997, at the regular meeting of the City Council, the City announced that it would begin enforcing the regulations as amended in 1996. All plot owners were notified that if they did not comply with the regulations by January 15, 1998, the City would remove all the noncomplying structures.
Thereafter, appellants filed suit alleging that the prohibition on vertical grave decorations violated their state and federal rights to freedom of expression, freedom of speech, and due process of law. Specifically, appellants argued that the City's prohibition violates the Florida Religious *1026 Freedom Restoration Act of 1998 (FRFRA). Ch. 98-412, §§ 1-6, 3297-98, Laws of Fla. (codified as §§ 761.01-.05, Fla. Stat. (2003)). After a bench trial, the United States District Court for the Southern District of Florida held that the right to place vertical grave structures was not protected under the FRFRA. See Warner v. City of Boca Raton, 64 F.Supp.2d 1272 (S.D.Fla.1999).
The Southern District rejected appellants' argument that the City's regulation violated their right to the free exercise of religion because the FRFRA protected any act substantially motivated by a sincerely held religious belief. Instead, the Southern District concluded that the FRFRA was "intended to protect conduct that, while not necessarily compulsory or central to a larger system of religious beliefs, nevertheless reflects some tenet, practice or custom of a religious tradition." Id. at 1282.
After determining the scope of the FRFRA, the Southern District determined whether the placement of vertical decorations on grave sites reflected a tenet, custom or practice of appellants' religious traditions or merely represented a personal preference regarding religious exercise. The Southern District adopted the framework used by Dr. Daniel Pals[2] to determine the place appellants' practices hold within a religious tradition. The court said:
Under Dr. Pals' framework, a court should consider four criteria in order to determine the place of a particular practice within a religious tradition. In particular, a court should consider whether the practice: 1) is asserted or implied in relatively unambiguous terms by an authoritative sacred text; 2) is clearly and consistently affirmed in classic formulations of doctrine and practice; 3) has been observed continuously, or nearly so, throughout the history of the tradition; and 4) is consistently observed in the tradition as we meet it in recent times. If a practice meets all four of these criteria, it can be considered central to the religious tradition. If the practice meets one or more of these criteria, it can be considered a tenet, custom or practice of the religious tradition. If the practice meets none of these criteria, it can be considered a matter of purely personal preference regarding religious exercise.
Id. at 1285.
Using this test, the Southern District found that marking graves with religious symbols constituted a practice of appellants' religious traditions. However, it found that the particular manner in which such markers and religious symbols are displayed  vertically or horizontally  amounted to a matter of purely personal preference. The Southern District also found that the City's prohibition on vertical grave structures did not substantially burden appellants' practice of religion. The court reasoned that the City's regulation did not prohibit appellants from decorating the graves with religious symbols. The Southern District pointed out that the regulations permitted horizontal grave markers which "may be engraved with any type of religious symbol. Moreover, out of consideration for mourners vertical grave decorations are permitted for sixty days after the date of burial and for a few days around certain holidays." Id. at 1287. Accordingly, the court found that the City's regulation did not violate appellants' rights *1027 under the FRFRA. Appellants appealed the Southern District's decision to the Eleventh Circuit, which certified the aforementioned questions. See Warner, 267 F.3d at 1227.

LAW AND ANALYSIS

I. Certified Question I
The Eleventh Circuit has certified two questions to this Court. The first question reads:
Does the Florida Religious Freedom Restoration Act broaden, and to what extent does it broaden, the definition of what constitutes religiously motivated conduct protected by law beyond the conduct considered protected by the decisions of the United States Supreme Court?
Warner, 267 F.3d at 1227. Before we define the parameters of our state law, we will first examine the applicable federal law.

Federal Law
Over the past hundred plus years, the United States Supreme Court has vacillated on the standard applicable to laws which in some way infringe on an individual's right to the free exercise of religion. Initially, the Supreme Court held that the Free Exercise Clause did not excuse an individual from the obligation to comply with neutral laws of general applicability. See, e.g., Minersville Sch. Dist. v. Gobitis, 310 U.S. 586, 594, 60 S.Ct. 1010, 84 L.Ed. 1375 (1940), overruled by West Va. State Bd. of Educ. v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943); Reynolds v. United States, 98 U.S. 145, 166-67, 25 L.Ed. 244 (1878). Thus, it appeared that if a neutral law of general applicability was rationally related to a matter of governmental interest, it would not violate the Free Exercise Clause.
However, in 1963 the Supreme Court expanded the protection given to religious freedom. In Sherbert v. Verner, 374 U.S. 398, 406, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963), the Supreme Court expressly rejected the use of the rational basis standard when evaluating religious freedom claims when it said, "It is basic that no showing merely of a rational relationship to some colorable state interest would suffice; in this highly sensitive constitutional area, `only the gravest abuses, endangering paramount [compelling] interests, give occasion for permissible limitation.'" (quoting Thomas v. Collins, 323 U.S. 516, 530, 65 S.Ct. 315, 89 L.Ed. 430 (1945)); see also Wisconsin v. Yoder, 406 U.S. 205, 215, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972) ("A way of life, however virtuous and admirable, may not be interposed as a barrier to reasonable state regulation of education if it is based on purely secular considerations; to have the protection of the Religion Clauses, the claims must be rooted in religious belief.").
Later, the Supreme Court modified the Sherbert"compelling interest" test by creating exceptions to its application. The Supreme Court found that the compelling interest test was inapplicable to Free Exercise claims in military and prison situations. See Goldman v. Weinberger, 475 U.S. 503, 508, 106 S.Ct. 1310, 89 L.Ed.2d 478 (1986) (holding that the First Amendment did not prevent the Air Force from passing regulations which prohibited the wearing of headgear required by a person's religion). See also Turner v. Safley, 482 U.S. 78, 87, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987) (holding that a court examining prison regulations must only inquire as whether the regulation is "reasonably related" to legitimate penological objectives, or whether it represents an "exaggerated response" to those concerns). The Supreme Court also began to retreat from the compelling interest test in cases involving *1028 Free Exercise challenges to a neutral law of general application. See Bowen v. Roy, 476 U.S. 693, 707-08, 106 S.Ct. 2147, 90 L.Ed.2d 735 (1986) ("Absent proof of an intent to discriminate against particular religious beliefs or against religion in general, the Government meets its burden when it demonstrates that a challenged requirement for governmental benefits, neutral and uniform in its application, is a reasonable means of promoting a legitimate public interest.") (plurality opinion); Lyng v. Northwest Indian Cemetery Prot. Ass'n, 485 U.S. 439, 450, 108 S.Ct. 1319, 99 L.Ed.2d 534 (1988) ("[I]ncidental effects of government programs, which may make it more difficult to practice certain religions but which have no tendency to coerce individuals into acting contrary to their religious beliefs, [do not] require government to bring forward a compelling justification.").
The Supreme Court further receded from Sherbert and the compelling interest test in Employment Division, Department of Human Resources v. Smith, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), which involved:
[W]hether the Free Exercise Clause of the First Amendment permits the State of Oregon to include religiously inspired peyote use within the reach of its general criminal prohibition on use of that drug, and thus permits the State to deny unemployment benefits to persons dismissed from their jobs because of such religiously inspired use.
Id. at 874, 110 S.Ct. 1595. The Supreme Court held that the Free Exercise Clause analysis articulated in Sherbert was inapplicable because the law was not aimed at promoting or restricting religious beliefs.[3] Noting that it had never invalidated any governmental action on the basis of the Sherbert test except for the denial of unemployment compensation, the Supreme Court stated its reasons for refusing to apply the test in the context of the Smith case:
We conclude today that the sounder approach, and the approach in accord with the vast majority of our precedents, is to hold the [compelling state interest] test inapplicable to such challenges. The government's ability to enforce generally applicable prohibitions of socially harmful conduct, like its ability to carry out other aspects of public policy, "cannot depend on measuring the effects of a governmental action on a religious objector's spiritual development." To make an individual's obligation to obey such a law contingent upon the law's coincidence with his religious beliefs, except where the State's interest is "compelling"  permitting him, by virtue of his beliefs, "to become a law unto himself"  contradicts both constitutional tradition and common sense.
Id. at 885, 110 S.Ct. 1595 (citations omitted). The Supreme Court rejected the argument advanced by the respondents in Smith that the compelling interest test should be used when the conduct prohibited *1029 by the State is central to the individual's religion. The Supreme Court opined: "What principle of law or logic can be brought to bear to contradict a believer's assertion that a particular act is `central' to his personal faith? Judging the centrality of different religious practices is akin to the unacceptable `business of evaluating the relative merits of differing religious claims.'" Id. at 887, 110 S.Ct. 1595 (quoting United States v. Lee, 455 U.S. 252, 263 n. 2, 102 S.Ct. 1051, 71 L.Ed.2d 127 (1982) (Stevens, J., concurring in the judgment)). The Court stated that an inquiry into the centrality of particular beliefs to a faith was not within the "judicial ken" and thus, improper. Id. at 887, 110 S.Ct. 1595 (quoting Hernandez v. Commissioner, 490 U.S. 680, 699, 109 S.Ct. 2136, 104 L.Ed.2d 766 (1989)).
Thereafter, in 1993, the United States Congress passed the Religious Freedom Restoration Act (RFRA). RFRA was intended to essentially overrule the Supreme Court's decision in Smith and restore the compelling state interest test set forth in Sherbert as the standard for free exercise challenges to laws of general applicability. See 42 U.S.C. § 2000bb (2000). Accordingly, RFRA prohibited the government from substantially burdening a person's free exercise of religion unless the government showed that the burden: "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(b) (2000). Prior to 2000, RFRA defined the "exercise of religion" as "the exercise of religion under the First Amendment to the Constitution." Religious Freedom Restoration Act, P.L. 103-141, § 5(4), 107 Stat. 1488, 1489 (1993). Now, RFRA defines the "exercise of religion" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." Id. (adopting definition in 42 U.S.C. § 2000cc-5(7)(A) (2000)).
Initially, RFRA applied to any governmental entity, whether state or federal. See P.L. 103-141, §§ 5-6, 107 Stat. 1488, 1489 (1993) (defining government as including "a branch, department, agency, instrumentality, and official... of the United States, a State, or a subdivision of a State" and providing that "[t]his Act applies to all Federal and State law"). The constitutionality of RFRA as applied to the states was challenged in City of Boerne v. Flores, 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997). In arguing that RFRA could be constitutionally applied to the states, the respondent argued that RFRA was a proper exercise of Congress's remedial and enforcement power under the Fourteenth Amendment. Id. at 517, 529, 117 S.Ct. 2157. According to the respondent in Flores, RFRA was a reasonable means of protecting the free exercise of religion as defined by Smith. Id. at 529, 117 S.Ct. 2157.
The Supreme Court rejected this argument, concluding that the scope and reach of RFRA distinguished it from other remedial and enforcement measures passed by Congress. Rather, the Court determined that RFRA was substantive in nature because it imposed a more stringent test for determining the constitutionality of laws burdening religion than that demanded by the United States Constitution as interpreted by the Supreme Court in Smith. According to the Court, state "[l]aws valid under Smith would fall under RFRA." Id. at 534, 117 S.Ct. 2157. Noting that under the Fourteenth Amendment the federal government did not have the power to substantively alter constitutional rights, id. at 529, 117 S.Ct. 2157, the Supreme Court invalided RFRA as applied to the states. *1030 Id. at 536, 117 S.Ct. 2157.[4] Therefore, the standard articulated by the Supreme Court in Smith remains the threshold of protection for religiously based activities afforded by the Free Exercise Clause contained in the United States Constitution.

Florida Law
Florida's Free Exercise Clause is found in the Florida Constitution's Declaration of Rights and provides:
There shall be no law respecting the establishment of religion or prohibiting or penalizing the free exercise thereof. Religious freedom shall not justify practices inconsistent with public morals, peace or safety. No revenue of the state or any political subdivision or agency thereof shall ever be taken from the public treasury directly or indirectly in aid of any church, sect, or religious denomination or in aid of any sectarian institution.
Art. I, § 3, Fla. Const. In interpreting the scope of constitutional rights, this Court has stated that in any state issue, the federal constitution represents the "floor" for basic freedoms, and the state constitution represents the "ceiling." See Traylor v. State, 596 So.2d 957, 962 (Fla.1992). This Court has not squarely addressed the parameters of Florida's free exercise clause, but other Florida courts have "treated the protection afforded under the state constitutional provision as coequal to the federal [provision], and have measured government regulations against it accordingly." Toca v. State, 834 So.2d 204, 208 (Fla. 2d DCA 2002) (applying Smith to conclude that rule of judicial administration requiring the signing of pleadings did not violate petitioner's rights under article I, section 3 of the Florida Constitution); see also Allen v. Allen, 622 So.2d 1369 (Fla. 1st DCA 1993) (finding that post-dissolution order prohibiting wife from attending church attended by husband was prohibited under free exercise clause of both the Florida Constitution and the First Amendment). Indeed, a commentary on the 1968 revision of this provision explains that the language of the Florida section "parallels the First Amendment of the U.S. Constitution" and that "cases under the First Amendment of the United States Constitution are of great value in evaluating the status of religious freedoms." Talbot "Sandy" D'Alemberte, Commentary to 1968 Revision, Art. I, § 3, Fla. Const., 25A Fla. Stat. Ann. 106-07 (West 2004).
Prior to the Supreme Court's decision in Smith, this Court applied the compelling interest test to free exercise claims.[5] For *1031 example, in Town v. State ex rel. Reno, 377 So.2d 648 (Fla.1979), we applied the Supreme Court's decisions in Sherbert and Yoder to the question of whether the State had a compelling interest in restricting the use of cannabis as a religious practice. Testimony before the trial court showed that the church permitted children and individuals who had no interest in learning the religion to use the drug. In light of these facts, we found that the State's compelling interest in protecting society from a dangerous drug outweighed the petitioner's free exercise interest. Id. at 651.[6]
In 1998, in response to the United States Supreme Court's decision in Flores, the Florida Legislature enacted a state version of the federal Religious Freedom Restoration Act, which was modeled after the federal RFRA. The preamble to the Florida Religious Freedom Restoration Act (FRFRA) provides:
WHEREAS, it is the finding of the Legislature of the State of Florida that the framers of the Florida Constitution, recognizing free exercise of religion as an unalienable right, secured its protection in s. 3, Art. I of the State Constitution, and
WHEREAS, laws which are "neutral" toward religion may burden the free exercise of religion as surely as laws intended to interfere with the free exercise of religion, and
WHEREAS, governments should not substantially burden the free exercise of religion without compelling justification, and
WHEREAS, the compelling interest test as set forth in certain federal court rulings is a workable test for striking sensible balances between religious liberty and competing prior governmental interests, and
WHEREAS, it is the intent of the Legislature of the State of Florida to establish the compelling interest test as set forth in Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963), and Wisconsin v. Yoder, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972), to guarantee its application in all cases where free exercise of religion is substantially burdened, and to provide a claim or defense to persons whose religious exercise is substantially burdened by government....
Ch. 98-412, at 3296-97, Laws of Fla. The FRFRA includes several important definitions:
(1) "Government" or "state" includes any branch, department, agency, instrumentality, or official or other person acting under color of law of the state, a county, special district, municipality, or any other subdivision of the state.

*1032 (2) "Demonstrates" means to meet the burden of going forward with the evidence and of persuasion.
(3) "Exercise of religion" means an act or refusal to act that is substantially motivated by a religious belief, whether or not the religious exercise is compulsory or central to a larger system of religious belief.
§ 761.02, Fla. Stat. (2003). The FRFRA also details the protections afforded to religious freedom:
(1) The government shall not substantially burden a person's exercise of religion, even if the burden results from a rule of general applicability, except that government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person:
(a) Is in furtherance of a compelling governmental interest; and
(b) Is the least restrictive means of furthering that compelling governmental interest.
(2) A person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief.
§ 761.03, Fla. Stat. (2003). Another provision of the FRFRA provides attorney's fees to the prevailing plaintiff from the government. See § 761.04, Fla. Stat. (2003). Lastly, the FRFRA states that nothing in the act will be construed to interpret or address the portion of article I, section 3 of the Florida Constitution or the First Amendment to United States Constitution which deals with the establishment of religion. See § 761.05, Fla. Stat. (2003). Thus, the FRFRA has made the compelling state interest test applicable to state cases involving questions of the free exercise of religion.
Based on the foregoing, we answer the first certified question in the affirmative. The protection afforded to the free exercise of religiously motivated activity under the FRFRA is broader than that afforded by the decisions of the United States Supreme Court for two interrelated reasons. First, the FRFRA expands the free exercise right as construed by the Supreme Court in Smith because it reinstates the Court's pre-Smith holdings by applying the compelling interest test to neutral laws of general application. Second, under the FRFRA the definition of protected "exercise of religion" subject to the compelling state interest test includes any act or refusal to act whether or not compelled by or central to a system of religious belief. The legislative history of the FRFRA suggests that in order to state a claim that the government has infringed upon the free exercise of religion, a plaintiff must only establish that the government has placed a substantial burden on a practice motivated by a sincere religious belief.[7] Thus, the FRFRA is necessarily broader than United States Supreme Court precedent, which holds that the "right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)." Smith, 494 U.S. at 879, 110 S.Ct. 1595 (internal quotation marks omitted).
Although we conclude that the FRFRA is broader than United States Supreme *1033 Court precedent, our analysis of this issue does not end here. Appellants and amici curiae[8] argue that under the FRFRA any act by an individual motivated by religion is subject to the compelling state interest test, or strict scrutiny standard. However, we find that appellants' interpretation of the FRFRA is too broad. According to the FRFRA, only government regulations which "substantially burden" a person's exercise of religion are subject to strict scrutiny. See § 761.03, Fla. Stat. (2003).
As discussed in Mack v. O'Leary, 80 F.3d 1175, 1178 (7th Cir.1996), there are three main definitions of substantial burden adopted at the federal level with regard to RFRA.
The Fourth, Ninth, and Eleventh Circuits define "substantial burden" as one that either compels the religious adherent to engage in conduct that his religion forbids (such as eating pork, for a Muslim or Jew) or forbids him to engage in conduct that his religion requires (such as prayer). Goodall by Goodall v. Stafford County School Board, 60 F.3d 168, 172-73 (4th Cir.1995); Cheffer v. Reno, 55 F.3d 1517, 1522 (11th Cir.1995); Bryant v. Gomez, 46 F.3d 948 (9th Cir.1995) (per curiam). The Eighth and Tenth Circuits use a broader definition-action that forces religious adherents "to refrain from religiously motivated conduct," Brown-El v. Harris, 26 F.3d 68, 70 (8th Cir.1994), or that "significantly inhibit[s] or constrain[s] conduct or expression that manifests some central tenet of a [person's] individual beliefs," Werner v. McCotter, 49 F.3d 1476, 1480 (10th Cir.1995), imposes a substantial burden on the exercise of the individual's religion. The Sixth Circuit seems to straddle this divide, asking whether the burdened practice is "essential" or "fundamental."
Id. at 1178. After considering these differing views, we reject the middle and broad definitions of "substantial burden" as inconsistent with the language and intent of the FRFRA. The middle definition employed by the Sixth Circuit is contrary to the definition of "exercise of religion" contained in the FRFRA in that it is dependent on whether an action is essential or fundamental to a person's religious belief system. If this Court were to make religious motivation the key for analysis of a claim, that would "read out of [FRFRA] the condition that only substantial burdens on the exercise of religion trigger the compelling interest requirement." Henderson v. Kennedy, 253 F.3d 12, 17 (D.C.Cir.2001).[9]
Accordingly, we conclude that the narrow definition of substantial burden adopted by the Fourth, Ninth, and Eleventh Circuits is most consistent with the language and intent of the FRFRA. Thus, we hold that a substantial burden on the free exercise of religion is one that either compels the religious adherent to engage in conduct that his religion forbids or forbids him to engage in conduct that his religion requires. See Mack, 80 F.3d at 1178. We acknowledge that our adoption of this definition may occasionally place courts in the position of having to determine whether a particular religious practice is obligatory or forbidden. However, we conclude that this inquiry is preferable to one that requires the Court to question *1034 the centrality of a particular religious belief or negates the legislative requirement that only conduct that is substantially burdened be protected by strict scrutiny.

II. Certified Question II
We now address the second question certified by the Eleventh Circuit, which asks:
If the Act does broaden the parameters of protected religiously motivated conduct, will a city's neutral, generally-applicable ordinance be subjected to strict scrutiny by the courts when the ordinance prevents persons from acting in conformity with their sincerely held religious beliefs, but the acts the persons wish to take are not 1) asserted or implied in relatively unambiguous terms by an authoritative sacred test, or 2) clearly and consistently affirmed in classic formulations of doctrine and practice, or 3) observed continuously, or nearly so, throughout the history of the religion, or 4) consistently observed in the tradition in recent times?
See Warner, 267 F.3d at 1227. Appellants and amici curiae object to the phrasing of the second certified question because the question is taken from the test used by Dr. Daniel L. Pals. Appellants argue that Dr. Pals' test adds requirements to the FRFRA because the test reads into the statute a requirement that the practice must have a basis in a larger system of beliefs. The focus under the FRFRA, however, is whether the appellants' action is substantially motivated by a religious belief and whether the governmental action enacted substantially burdens the free exercise of that religious belief. See §§ 761.02(3), 761.03(1), Fla. Stat. (2003).
Therefore, we have chosen to rephrase the second certified question as follows:
Whether the City of Boca Raton Ordinance at issue in this case violates the Florida Religious Freedom Restoration Act (FRFRA)?
We answer the second certified question in the negative. As noted above, the Act specifically mandates that the strict-scrutiny standard be applied irrespective of whether or not the burden results from a rule of general applicability. See § 761.03, Fla. Stat. (2003). Under the test articulated by the FRFRA, the plaintiff bears the initial burden of showing that a regulation constitutes a substantial burden on his or her free exercise of religion. See § 761.03(1), Fla. Stat. (2003). Once that threshold determination has been made, the government bears the burden of establishing that the regulation furthers a compelling governmental interest and is the least restrictive means of furthering that interest. See § 761.03(1)(a)- (b), Fla. Stat. (2003). Thus, the plaintiffs must demonstrate that the government has placed a substantial burden on a practice motivated by a sincere religious belief. See, e.g., Weir v. Nix, 890 F.Supp. 769, 783 (S.D.Iowa 1995). The Southern District specifically noted: "It is undisputed that the plaintiffs placed vertical decorations on their [c]emetery plots in observance of sincerely held religious beliefs." Warner, 64 F.Supp.2d at 1277.[10] Since appellants *1035 have demonstrated that their religious beliefs are sincere, the next issue is whether the government's regulation constitutes a substantial burden on the free exercise of religion.
A plaintiff who claims that a governmental regulation constitutes a substantial burden must "prove that a governmental regulatory mechanism burdens the adherent's practice of his or her religion by pressuring him or her to commit an act forbidden by the religion or by preventing him or her from engaging in conduct or having a religious experience which the faith mandates." Graham v. Comm'r, 822 F.2d 844, 850-51 (9th Cir.1987), aff'd sub nom. Hernandez v. Comm'r, 490 U.S. 680, 699, 109 S.Ct. 2136, 104 L.Ed.2d 766 (1989); see also Mack. In the instant case, the Southern District found that the City's regulation did not substantially burden appellants' free exercise of religion. See Warner, 64 F.Supp.2d at 1287. We agree with the Southern District's reasoning:
The City's Regulations do not prohibit the plaintiffs from marking graves and decorating them with religious symbols. Rather, the Regulations permit only horizontal grave markers. These markers may be engraved with any type of religious symbol. Moreover, out of consideration for mourners vertical grave decorations are permitted for sixty days after the date of burial and for a few days around certain holidays. Aside from these times, however, vertical grave decorations are not permitted in the Cemetery. The Court finds that these restrictions on the manner in which religious decorations may be displayed merely inconvenience the plaintiffs' practices of marking graves and decorating them with religious symbols. Accordingly, the Court finds that the prohibition on vertical grave decorations does not substantially burden the plaintiffs' exercise of religion within the meaning of the Florida RFRA.
Id. Since the City's regulation does not substantially burden appellants' religious beliefs, no further analysis is required under the FRFRA.

III. Additional Issues
Appellants contend that this Court should also address whether the City's neutral, generally applicable horizontal marker cemetery regulation violates other provisions of the Florida Constitution. The Eleventh Circuit stated that its phrasing of the certified questions was not designed to restrict this Court's analysis. This Court has the authority to consider issues other than those upon which jurisdiction is based, but this authority is discretionary. See Savona v. Prudential Ins. Co. of America, 648 So.2d 705, 707 (Fla.1995). This Court has noted that this discretion should be exercised only when the other issues have been properly briefed and argued and are dispositive of the case. See id. Because this issue is not dispositive of this case, we decline appellants' invitation to address this issue.

CONCLUSION
We hold that the FRFRA expands the scope of religious protection beyond the conduct considered protected by cases from the United States Supreme Court. We also hold that under the Act, any law, *1036 even a neutral law of general applicability, is subject to the strict scrutiny standard where the law substantially burdens the free exercise of religion.[11] For the foregoing reasons, we answer the first certified question in the affirmative and the rephrased certified question in the negative and return this case to the United States Court of Appeals for the Eleventh Circuit.
It is so ordered.
PARIENTE, C.J., and WELLS and ANSTEAD, JJ., concur.
LEWIS, J., concurs in result only.
CANTERO and BELL, JJ., did not participate in the consideration of this case.
NOTES
[1] We have chosen to rephrase the second certified question because we are keenly aware of the Supreme Court's warning that it "is not within the judicial ken to question the centrality of particular beliefs or practices to a faith." Employment Div., Dep't of Human Res. v. Smith, 494 U.S. 872, 887, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990) (quoting Hernandez v. Comm'r, 490 U.S. 680, 699, 109 S.Ct. 2136, 104 L.Ed.2d 766 (1989)). The federal court's four-part test not only runs the risk of placing judges in the untenable position of evaluating the merits of different religious claims, it also ignores the fact that the FRFRA protects more conduct than conduct that is central to a litigant's religious practices.
[2] Dr. Pals is a professor and former Chair of the Department of Religious Studies at the University of Miami.
[3] In Smith, The United States Supreme Court defined the Free Exercise of religion as

the right to believe and profess whatever religious doctrine one desires. Thus, the First Amendment obviously excludes all "governmental regulation of religious beliefs as such." The government may not compel affirmation of religious belief, punish the expression of religious doctrines it believes to be false, impose special disabilities on the basis of religious views or religious status, or lend its power to one or the other side on controversies over religious authority or dogma.
But the "exercise of religion" often involves not only belief and profession but the performance of (or abstention from) physical acts....
Smith, 494 U.S. at 877, 110 S.Ct. 1595 (citations omitted).
[4] The Eighth, Ninth, and Tenth Circuits have all found the RFRA to be constitutional as applied to the federal government. See Guam v. Guerrero, 290 F.3d 1210, 1221 (9th Cir.2002) ("[W]e now join our sister circuits in holding RFRA constitutional as applied to the federal realm."); Kikumura v. Hurley, 242 F.3d 950, 960 (10th Cir.2001) ("Thus, RFRA as applied to the federal government is severable from the portion of the RFRA declared unconstitutional in Flores, and independently remains applicable to federal officials."); In re Young, 141 F.3d 854, 863 (8th Cir.) ("Because the portion of RFRA applicable to federal law violates neither the separation of powers doctrine nor the Establishment Clause, we conclude that RFRA is constitutional."), cert. denied, 525 U.S. 811, 119 S.Ct. 43, 142 L.Ed.2d 34 (1998).
[5] As we noted in Malicki v. Doe, 814 So.2d 347, 355, 355 n. 5 (Fla.2002), a claim that a law violates the Establishment Clause is assessed under the three-part test announced by the United States Supreme Court in Lemon v. Kurtzman, 403 U.S. 602, 612-13, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). Additionally, Florida's Constitution imposes a prohibition on the use of state revenue "directly or indirectly in the aid of any church, sect, or religious denomination or in aid of any sectarian institution." Art. I, § 3, Fla. Const.; see also Rice v. State, 754 So.2d 881, 883 (Fla. 5th DCA 2000) (recognizing that "when considering an establishment clause claim under Florida's constitution, a fourth consideration has been added by article I, section 3, of the Florida Constitution").
[6] Appellants cite this Court's decisions in Public Health Trust v. Wons, 541 So.2d 96 (Fla.1989), and In re Dubreuil 629 So.2d 819 (Fla.1993), for the proposition that the Florida Free Exercise Clause requires the state to show that it has a compelling interest in enacting neutral laws of general application. However, neither Wons nor Dubreuil dealt exclusively with a free exercise challenge. Rather, both cases also involved the right of privacy. At issue was the right of an expectant mother to refuse a blood transfusion on religiously motivated grounds. This Court applied the compelling interest test in both cases and held that the state's interest in preserving the life of the mother, and thus, in maintaining a home with two parents did not override the mother's right to privacy in making decisions concerning her health based on religious doctrine. Dubreuil, 629 So.2d at 828; Wons, 541 So.2d at 98.
[7] "One who claims a challenged government action violates his or her free exercise of religion must first establish that the belief in question is religious in nature, is sincerely held, and that the government action actually infringes upon the free exercise of the individual's belief." Weir v. Nix, 890 F.Supp. 769, 783 (S.D.Iowa 1995).
[8] Jeb Bush, Governor of Florida; Liberty Counsel; Florida League of Cities, Inc.; and The International Cemetery and Funeral Association filed amicus briefs in this Court.
[9] This Court has stated that a statutory provision should not be construed in such a way that it renders the statute meaningless or leads to absurd results. See Palm Beach County Canvassing Bd. v. Harris, 772 So.2d 1273 (Fla.2000).
[10] The FRFRA clearly prohibits a reviewing court from conducting a factual inquiry which questions the validity or centrality of a plaintiff's beliefs. The Supreme Court has allowed limited inquiries into religious practices in order to determine whether a governmental regulation substantially burdened conduct motivated by sincere religious beliefs. See Jimmy Swaggart Ministries v. Bd. of Equalization, 493 U.S. 378, 391, 110 S.Ct. 688, 107 L.Ed.2d 796 (1990) (noting that no evidence was presented to show that collection and payment of taxes violated church's sincerely held beliefs); Bob Jones Univ. v. United States, 461 U.S. 574, 603 n. 8, 103 S.Ct. 2017, 76 L.Ed.2d 157 (1983) (noting evidentiary record which showed that the challenged practices of the university were based on a genuine belief that the Bible forbids interracial dating and marriage); Wisconsin v. Yoder, 406 U.S. 205, 215-19, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972) (examining the record, testimony of expert witnesses, and religious texts to determine whether compulsory education violated the Amish right to free exercise of religion).
[11] Both the Third and Fourth District Courts of Appeal have considered the FRFRA. In First Baptist Church v. Miami-Dade County, 768 So.2d 1114 (Fla. 3d DCA 2000), the Third District considered whether the county's decision to deny the church's request for a zoning special exception violated the FRFRA. The Third District found that the county did not have the burden of showing it had a compelling interest in denying the church's zoning request. The Third District, relying on United States Supreme Court precedent, reasoned that neutral laws of general application were not required to be justified by a compelling governmental interest. Since the regulation at issue regulated only conduct and was entirely secular in purpose and effect, the Third District held that the zoning board's decision did not violate the FRFRA. Id. at 1118.

Similarly, in Abbott v. City of Fort Lauderdale, 783 So.2d 1213 (Fla. 4th DCA 2001), the petitioner argued that the city's denial of a permit to conduct a feeding program for the homeless violated his rights under the FRFRA. However, the Fourth District accepted the trial court's findings that the city's rule infringed upon the petitioner's religious rights; thus, it required the city to show that it had a compelling interest in selecting an alternate site. Accordingly, the Fourth District remanded the case for the trial court to determine whether the alternate site selected by the city represented the least intrusive means of furthering the government's compelling interest. Id. at 1215.
We note that the Third District's analysis in First Baptist is inconsistent with our opinion in the instant case. Accordingly, we disapprove the opinion in First Baptist.