WARNER, J.
 

 Westgate Tabernacle appeals a final judgment entered after a jury verdict finding that the imposition of Palm Beach
 
 *1029
 
 County’s Unified Land Development Code (“ULDC” or “code”) requirements on Westgate’s activities as a homeless shelter did not violate the Florida Religious Freedom Restoration Act (“FRFRA”) or the federal Religious Land Use and Institutionalized Persons Act (“RLUIPA”). Because the code requirements did not constitute a substantial burden on its religious beliefs, we affirm the final judgment.
 

 Westgate Tabernacle, Inc. is a not-for-profit corporation which operates a church located in West Palm Beach. The church and its pastors, the Reverends Avis Hill and Sherry McGee-Hill, opened the church property as a shelter for the homeless in Palm Beach County as a part of its Christian mission.
 

 Westgate’s church is situated in a Mul-ti-Family Residential High Density (RH) Zoning District under the ULDC. The ULDC constitutes the County’s official zoning code and has been approved by the Board of County Commissioners. The code lists all permitted uses, special uses, and conditional uses (class A and B) within a given district. A permitted use is by right and requires no prior approval. ULDC § 6.4.C.1 (1995). Class B conditional uses are permitted “if they are approved by the Zoning Commission in accordance with the procedures and standards of Sec. 5.4.F.” ULDC § 6.4.C.4. Class A conditional uses require approval “by the Board of County Commissioners in accordance with the procedures and standards of Sec. 5.4.E.” ULDC § 6.4.C.5. The ULDC includes a detailed procedure involved when applying for a conditional use permit (“CUP”).
 
 See
 
 ULDC § 5.4.
 

 The code uses the term “congregate living facility” and not “homeless shelter” to regulate group living facilities. Congregate living facilities are permitted in the RH zoning district. ULDC § 6.2.D.8. The code identifies three types of facilities: Type 1 can house up to six people and is a permitted use in the RH district. ULDC §§ 6.4.D.24.b.(l), 6.2.D.8. Type 2 can house up to fourteen and is a class B conditional use. ULDC §§ 6.4.D.24.b.(2), 6.2.D.8. Type 3 determines the number of residents based on land density and requires Board approval as a class A conditional use. ULDC §§ 6.4.D.24.b.(3), 6.2.D.8.
 

 “Prohibited uses” are those not listed in the use regulation schedule “as permitted by right, as a Conditional use, or a Special use,” and “are not allowed in such district unless otherwise expressly permitted under this Code.” ULDC § 6.4.C.6. In other words, any use not expressly listed under the district’s definition or in the use regulation schedule is prohibited.
 

 Because Westgate was operating a shelter for more than six people without a CUP, the County issued a May 4, 1998, notice of violation entitled, “Operating a Homeless Shelter is Prohibited in this Zoning District.” The notice gave West-gate two months to comply or attend a hearing before the Code Enforcement Board for the imposition of fines.
 

 Westgate failed to correct the violations, and the Board conducted a hearing, which Reverend Hill and Westgate’s attorney attended. At the hearing Westgate’s counsel conceded that the shelter currently housed around twenty people, admitting that the use was not legal in the district without a conditional use permit. West-gate requested time to obtain the necessary permit, and the Board agreed to give Westgate 180 days, during which time it requested that the church attempt to keep the number of residents at fourteen. The Board’s written order found Westgate in violation of section 6.4.C.6 and gave West-gate until April 5, 1999, to either file an application for a Type 2 congregate living facility or to cease operations as a homeless shelter. If Westgate did not exercise
 
 *1030
 
 one of these options within the allotted time, the County would impose a $100 fine for each day the violation continued. Westgate did not appeal the Board’s order, as permitted under article 14 of the ULDC. Westgate submitted but then withdrew a permit application during the 180-day period.
 

 A code enforcement officer inspected the property in April 1999, concluding that Westgate had not complied with the Board’s order. Based upon his affidavit of non-compliance, the Board imposed a fine as set forth in its order. Westgate did not appeal the fíne order. In October 1999, Westgate shut the shelter. Nevertheless, the County imposed a $22,700 fine against Westgate for its period of noncompliance. Westgate did not satisfy the debt, and the County imposed a lien on the property.
 

 Westgate filed two multi-count complaints against the County based on a variety of state and federal constitutional doctrines claiming that the County had violated Florida’s Religious Freedom Restoration Act, chapter 761, Florida Statutes, and the federal Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc, et seq. Throughout a lengthy trial, Westgate presented evidence to show that the operation of a shelter was mandated by religious beliefs. It also presented some evidence that the ULDC imposed an outright ban of homeless shelters on RH-zoned property. Much of the evidence produced explained the mission of Westgate and that its sheltering activities have substantially improved many lives. Westgate stressed that County agencies routinely sent homeless people to West-gate, as no other shelters existed in Palm Beach County.
 

 The County presented witnesses who explained that the ULDC exists to ensure public health and safety. Homeless shelters, identified as congregate living facilities, are permitted in Westgate’s district upon obtaining a CUP, and Westgate was aware of this fact at the time of the 1998 violation. In fact, Westgate admitted that it was required to obtain a conditional use permit. The County also elicited testimony that the code enforcement department tried in vain, by repeatedly meeting with church officials and their lawyers, to help the church obtain a CUP.
 

 After presentation of the case, the jury found that the application of the ULDC to the church did not substantially burden its religious activities in violation of either FRFRA or RLUIPA. It also found that the ULDC constituted the least restrictive means of furthering a compelling interest. It thus found in favor of the County, and the court entered judgment accordingly, from which this appeal is taken.
 

 FRFRA and RLUIPA each include a provision meant to protect the free exercise of religion. Section 761.03 of the FRFRA provides:
 

 (1) The government shall not
 
 substantially burden
 
 a person’s exercise of religion, even if the burden results from a rule of general applicability, except that government may substantially burden a person’s exercise of religion only if it demonstrates that application of the burden to the person:
 

 (a) Is in furtherance of a compelling governmental interest; and
 

 (b) Is the least restrictive means of furthering that compelling governmental interest.
 

 (emphasis supplied). The parallel statute in RLUIPA provides:
 

 No government shall impose or implement a land use regulation in a manner that imposes a
 
 substantial burden
 
 on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates
 
 *1031
 
 that imposition of the burden on that person, assembly, or institution—
 

 (A) is in furtherance of a compelling governmental interest; and
 

 (B) is the least restrictive means of furthering that compelling governmental interest.
 

 42 U.S.C. § 2000ec(a)(l) (emphasis supplied).
 

 In light of the above similarities, federal and state courts have applied the same analysis under FRFRA and RLUIPA.
 
 See Christian Romany Church Ministries, Inc. v. Broward County,
 
 980 So.2d 1164 (Fla. 4th DCA 2008) (relying on cases applying RLUIPA in a case involving the FRFRA);
 
 Konikov v. Orange County,
 
 302 F.Supp.2d 1328, 1346 (M.D.Fla.2004),
 
 rev’d in part on other grounds,
 
 410 F.3d 1317 (11th Cir.2005).
 

 The party claiming that a government action constitutes a violation of FRFRA or RLUIPA “bears the initial burden of showing that a regulation constitutes a
 
 substantial burden
 
 on his or her
 
 exercise of religion.” Warner v. City of Boca Raton,
 
 887 So.2d 1023, 1034 (emphasis supplied);
 
 Midrash Sephardi Inc. v. Town of Surfside,
 
 366 F.3d 1214, 1225 (11th Cir.2004) (“To invoke the protection ... of RLUIPA, plaintiffs bear the burden of first demonstrating that the regulation substantially burdens religious exercise.”). Section 761.02(3), Florida Statutes, defines “exercise of religion” as “an act or refusal to act that is substantially motivated by a religious belief, whether or not the religious exercise is compulsory or central to a larger system of religious belief.” RLUI-PA has two definitions of “religious exercise.” First, “any exercise of religion, whether or not compelled by, or central to, a system of religious belief’ and, second, “[t]he use, building, or conversion of real property for the purpose of religious exercise shall be considered to be religious exercise of the person or’ entity that uses or intends to use the property for that purpose.” 42 U.S.C. § 2000cc-5(7)(A), (B).
 

 Neither statutory scheme expressly defines “substantial burden.” The Florida Supreme Court defined this term for purposes of the FRFRA as “one that either compels the religious adherent to engage in conduct that his religion forbids or forbids him to engage in conduct that his religion requires.”
 
 Warner,
 
 887 So.2d at 1033. Under RLUIPA,
 

 a “substantial burden” must place more than an inconvenience on religious exercise; [it] is akin to significant pressure which directly coerces the religious adherent to conform his or her behavior accordingly. Thus, a substantial burden can result from pressure that tends to force adherents to forego religious precepts or from pressure that mandates religious conduct.”
 

 Mid,rash,
 
 366 F.3d at 1227 (citation omitted). We have held that “the ‘substantial burden’ standard is the same under both” FRFRA and RLUIPA.
 
 Christian Romany,
 
 980 So.2d at 1167.
 

 Westgate argues on appeal that the trial court erred in denying its motion for directed verdict by failing to conclude as a matter of law that the application of the ULDC to Westgate’s sheltering activities caused a substantial burden on the church. The County does not dispute that the plaintiffs house the homeless based on deeply cherished religious beliefs. However, the County presented sufficient evidence to support the jury’s conclusion that the ULDC did not substantially burden Westgate in accordance with relevant case law.
 

 The ULDC required a permit for the conditional use as a homeless shelter in the church’s zoning district. “The mere
 
 *1032
 
 requirement that one apply for a special exception from an ordinance restricting the use of property is not a substantial burden.”
 
 See Konikov,
 
 302 F.Supp.2d at 1342. A church must exhaust its administrative remedies and cannot merely predict that it would be denied the permit if it were to apply.
 
 Id.
 
 The County informed Westgate in the notice of violation and at the Code Enforcement Board hearing that a CUP was necessary to house more than six individuals. Although Westgate applied for a permit, it withdrew its application. Based on this evidence alone, the jury could conclude that the County did not substantially burden Westgate’s religious exercise.
 

 Even assuming the ULDC prohibited homeless shelters outright on RH-zoned property, Westgate would still fail to prove a substantial burden, because it did not show that running a homeless shelter at its specific location was fundamental to its religious exercise.
 
 See Christian Romany,
 
 980 So.2d at 1168. In fact, church witnesses testified that Westgate officials had found a suitable alternative location for the shelter shortly after receiving the notice of violation, but were unable to purchase the property. In a similar context, where a church resisted condemnation of its church property without showing how the specific property was unique to the conduct of its religious exercise, this court stated, “While it may be inconvenient for the church to have to move its location, it will not present a substantial burden on the exercise of religion” under FRFRA.
 
 Id.
 
 at 1166;
 
 see also Hollywood, Cmty. Synagogue, Inc. v. City of Hollywood,
 
 430 F.Supp.2d 1296, 1319 (S.D.Fla.2006) (finding no substantial burden under RLUIPA as “[t]he Synagogue has not shown that its property carries unique religious significance or that other properties are not available that could accommodate its practices”).
 

 Neither FRFRA nor RLUIPA prohibits the application of valid, neutral zoning provisions to church property to curtail uses not permitted in the area. As explained in
 
 Civil Liberties for Urban, Believers v. City of Chicago,
 
 342 F.3d 752, 762-63 (7th Cir.2003), regarding RLUIPA:
 

 [W]e find that these conditions [the costs of applying for and complying with special land use permitting requirements] do not amount to a substantial burden on religious exercise. While they may contribute to the ordinary difficulties associated with location (by any person or entity, religious or nonreligious) in a large city, they do not render impracticable the use of real property ... for religious exercise, much less discourage churches from locating or attempting to locate in Chicago. Significantly, each of the five individual plaintiff churches has successfully located within Chicago’s city limits. That they expended considerable time and money so to do does not entitle them to relief under RLUIPA’s substantial burden provision. Otherwise, compliance with RLUIPA would require municipal governments not merely to treat religious land uses on an equal footing with nonreligious land uses, but rather to favor them in the form of an outright exemption from land-use regulations. Unfortunately for Appellants, no such free pass for religious land uses masquerades among the legitimate protections RLUIPA affords to religious exercise.
 

 (citations omitted).
 

 Although its shelter has grown beyond a Type 2 facility to a Type 3 facility because it now houses nearly 100 persons at a time, Westgate has not applied for the required permits or received the approval of the Board of County Commissioners. Admit
 
 *1033
 
 tedly, to obtain such a permit would require substantial renovations, because the church does not have sufficient space to house that many people or even provide restrooms for such a number. Nevertheless, it has not proved that the ULDC poses a substantial burden to its religious exercise. The court correctly denied Westgate’s motion for directed verdict.
 

 Because we hold that Westgate did not show that the County’s imposition of its permitting requirements constituted a substantial burden on its exercise of religion, the County did not violate FRFRA or RLUIPA. We affirm as to all other issues raised.
 

 HAZOURI, J., and SHAHOOD, GEORGE A., Senior Judge, concur.