834 So.2d 204 (2002)
Jesse TOCA, Petitioner,
v.
STATE of Florida, Respondent.
Nos. 2D01-1424, 2D01-5510, 2D02-131.
District Court of Appeal of Florida, Second District.
September 6, 2002.
*205 Jesse Toca, pro se.
Robert A. Butterworth, Attorney General, Tallahassee, and Richard M. Fishkin, Assistant Attorney General, Tampa, for Respondent.

ORDER ON MOTION TO ACCOMMODATE RELIGIOUS BELIEFS
NORTHCUTT, Judge.
Jesse Toca, a pro se litigant who has filed numerous proceedings in this court, persists in refusing to sign his filings. On March 7, 2002, we directed Mr. Toca to sign his filings and warned that unsigned documents filed after that date would be stricken. In response, Mr. Toca has filed a motion in which he asserts that we must forgo the signature requirement as an accommodation of his religious beliefs. He is mistaken.[1]

BACKGROUND
Mr. Toca alleges that his religious beliefs prohibit his taking any sort of oath.[2] *206 Further, he maintains that "[r]equiring or forcing [him] to sign any documents he files ... amounts to forcing [him] to take an oath or to pledge allegiance to this Court, which amounts to forcing this Court's religion upon [him]." Therefore, he argues, we are compelled to excuse him from the signature requirement by the Free Exercise Clauses of the Florida and Federal Constitutions, the federal Religious Freedom Restoration Act of 1993, Florida's Religious Freedom Restoration Act of 1998, and a United Nations treaty known as the International Covenant on Civil and Political Rights.[3]
We asked the State to respond to Mr. Toca's motion and, in particular, to address the question whether Florida's Religious Freedom Restoration Act of 1998 (RFRA), § 761.01-.05, Fla. Stat. (2002), is applicable to rules of court. Instead, the State has asserted that Mr. Toca's alleged religious belief is not protected by the RFRA because it is not sincere. The State points to several 1998 documents filed by Mr. Toca or on his behalf in proceedings before the County Court for Pinellas County, the Circuit Court for the Sixth Judicial Circuit, and the Florida Judicial Qualifications Commission, all of which were signed by him and most of which were signed under oath or verified under penalty of perjury. The State charges that Mr. Toca actually is motivated by his belief that refusing to sign his filings permits him to lie in court proceedings without fear of prosecution for perjury.

DISCUSSION
Florida Rule of Judicial Administration 2.060 sets forth the requirements for the signing of pleadings and other filings. Subsection (c) describes the signature requirements for filings of attorneys. Subsection (d), entitled "Party Not Represented by Attorney to Sign," requires that "[a] party who is not represented by an attorney shall sign any pleading or other paper and state the party's address and telephone number, including area code." Subsection (e) describes the forms of signatures deemed acceptable for purposes of the rule. It provides:
(1) The signatures required on pleadings and papers by subdivisions (c) and (d) of this rule may be:
(A) original signatures;
(B) original signatures that have been reproduced by electronic means, such as on electronically transmitted documents or photocopied documents; or
(C) any other signature format authorized by general law, so long as the clerk where the proceeding is pending has the capability of receiving and has obtained approval from the Supreme Court of Florida to accept pleadings and papers with that signature format.
Mr. Toca has not signed his filings in any manner that complies with this rule.[4]
*207 As a preliminary matter, we resist the temptation to simply end the discussion by pointing out that the signature required of Mr. Toca is not an oath. This can be seen by comparing the rule governing filings by unrepresented litigants to the requirement imposed on attorneys. The latter provides that "[t]he signature of an attorney shall constitute a certificate by the attorney that the attorney has read the pleading or other paper; that to the best of the attorney's knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay." Fla. R. Jud. Admin. 2.060(c). In contrast, rule 2.060(d) states that an unrepresented person merely must affix his signature along with his address and telephone number.
Whether the certification contemplated in the attorney's signature requirement qualifies as an oath may be debatable. See Metcalf v. Langston, 296 So.2d 81 (Fla. 1st DCA 1974) (observing that an attorney's signature on a pleading is a certification that there are good grounds to support it, but does not attest to its truthfulness). If that is so, there can be no question that the bare signature required of an unrepresented person is not an oath. Rather, the purpose of this requirement is simply, but importantly, one of authentication. See Schaefer v. Riegelman, 250 Wis.2d 494, 639 N.W.2d 715 (2002); Coker v. Weatheread, 852 S.W.2d 764 (Tex.App.1993). Requiring signatures reduces the possibility that a court will act in reliance on allegations, representations, arguments, stipulations, or admissions of a party who has not actually made them. See, e.g., J.L.S. v. R.J.L., 708 So.2d 293 (Fla. 2d DCA 1998) (reversing order transferring venue based on alleged unsigned stipulation that was disavowed by appellant).
The fact that Mr. Toca's signature would not constitute an oath does not resolve the issue before us, however. To the contrary, this fact might be wholly irrelevant, depending on which body of law we apply. This would be the case under a purely constitutional analysis.
Both the Federal and the Florida Constitutions guarantee an individual's right to freely exercise his religion.[5] When considering assertions that these provisions exempt a person from regulatory mandates when compliance would contravene his religious beliefs, courts avoid questioning the rationality of those beliefs. In Employment Division, Department of *208 Human Resources v. Smith, 494 U.S. 872, 887, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), the Court observed that "[i]t is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds" (quoting Hernandez v. Comm'r, 490 U.S. 680, 699, 109 S.Ct. 2136, 104 L.Ed.2d 766 (1989)).
Therefore, although we have pointed out that Mr. Toca's signature would not constitute an oath in a secular sense, we do not presume to question whether his interpretation of the religious proscription is valid or rational. Further, although Mr. Toca has not yet proved that he sincerely abides by a religious proscription against taking oaths and that this prohibition includes the signing of documents filed in this court, we will assume the truth of these allegations for purposes of analyzing Mr. Toca's constitutional assertions.
Nevertheless, the Federal Constitution does not require us to excuse Mr. Toca from the signature rule. In Smith, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876, the United States Supreme Court held that the right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes conduct that his religion prescribes, or vice versa. The Smith Court rejected a claim by Native Americans that the Free Exercise Clause permitted them to ingest peyote for religious purposes notwithstanding the Oregon controlled substances law. In a majority opinion by Justice Scalia, the Court held that a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice.
Applying Smith, we can easily see that rule 2.060(d) is a neutral, generally applicable regulation that only incidentally burdens Mr. Toca's exercise of religion. Therefore, the Free Exercise Clause of the Federal Constitution does not exempt Mr. Toca from the signature requirement contained in rule 2.060(d).
We have found no authority holding that Florida's Free Exercise Clause requires a different analysis or result. For the most part, the courts have treated the protection afforded under the state constitutional provision as coequal to the federal one, and have measured government regulations against it accordingly.[6]See, e.g., Yasir v. Singletary, 766 So.2d 1197 (Fla. 5th DCA 2000). See also Commentary to Art. I, § 3, 1968 Revision of the Florida Constitution (observing that Florida's Free Exercise Clause parallels the First Amendment and that cases under the First Amendment are "of great value in evaluating the status of religious freedoms"). In some instances, Florida courts have applied a compelling interest test in cases involving an "overlap" of the right to free exercise and a fundamental right, such as the Florida constitutional right of privacy. See In re Dubreuil, 629 So.2d 819, 822 (Fla.1993). The matter before us involves no such overlap. Accordingly, we apply Smith and conclude that requiring Mr. Toca to comply with rule 2.060(d) does not violate his rights under article I, section 3 of the Florida Constitution.
In addition to his constitutional argument, Mr. Toca relies on the so-called Religious *209 Freedom Restoration Acts (RFRA) enacted by the United States Congress and the Florida Legislature. Congress passed the federal law in 1993 in direct response to the Smith decision. 42 U.S.C. § 2000bb-1 to -4. However, the United States Supreme Court invalidated the law as applied to state and local regulations. City of Boerne v. Flores, 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997). Therefore, Mr. Toca's reliance on it is for naught.
In response to Flores, the Florida Legislature passed Florida's own Religious Freedom Restoration Act of 1998, modeled after its federal predecessor. The avowed purpose of the legislation is to require application of the compelling interest test in free exercise cases notwithstanding its rejection by the United States Supreme Court in Smith. § 761.01, Fla. Stat. (Supp. 1998).[7]
Section 761.03 of the Act provides:
761.03. Free exercise of religion protected
(1) The government shall not substantially burden a person's exercise of religion, even if the burden results from a rule of general applicability, except that government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person:
(a) Is in furtherance of a compelling governmental interest; and
(b) Is the least restrictive means of furthering that compelling governmental interest.
(2) A person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief.
The statute defines government as "any branch, department, agency, instrumentality, or official or other person acting under color of law of the state, a county, special district, municipality, or any other subdivision of the state." § 761.02(1), Fla. Stat. (2002). Section 761.02(3), defines an exercise of religion as "an act or refusal to act that is substantially motivated by a religious belief, whether or not the religious exercise is compulsory or central to a larger system of religious belief."
Determining whether a person's act or refusal to act is substantially motivated by a religious belief and whether his exercise of religion is substantially burdened by a government regulation would require determinations of facthence, the State's assertion that Mr. Toca is not burdened at all because he is not, in truth, motivated by religious belief. Were we to decide this matter under the RFRA, we likely would appoint a commissioner to take evidence and determine these essential facts, as to which Mr. Toca would bear the burden of proof. See Diaz v. Collins, 114 F.3d 69 (5th Cir.1997) (interpreting federal RFRA). If these facts were found in Mr. Toca's favor, our inquiry would turn to whether the government has a compelling interest in imposing the signature requirement on him and whether doing so is *210 the least restrictive means of furthering that interest. Pursuant to section 761.03(1), the burden to demonstrate these things would be on the government. Section 761.02(2) defines demonstrates as "to meet the burden of going forward with the evidence and of persuasion."
As can be seen, by imposing the compelling interest test, the RFRA may well restrict the government's ability to burden an individual's religious freedom to a narrower range of circumstances than is permitted under the constitutional analysis in Smith.[8] This difference has no bearing here, though, because the RFRA cannot control when the regulation under consideration is a rule of practice or procedure in the courts. The Florida Constitution grants to the Florida Supreme Court exclusive power to prescribe such rules. Art. V, § 2, Fla. Const. Under the separation of powers doctrine, codified in our constitution at article II, section 3, the legislature may not exercise that power.
The RFRA does not violate these constitutional principles by devising any particular rule of practice or procedure. By its terms, however, it proscribes any government regulation that substantially burdens a person's exercise of religion unless the government demonstrates that applying the regulation to the person serves a compelling government interest by the least restrictive means. If this legislation were to be applied to rules of practice and procedure in the courts, it would, in effect, append a statutory proviso onto each such rule. The Florida Constitution does not permit this. Therefore, we reject Mr. Toca's assertion that the RFRA entitles him to file documents in this court without signing them as required by rule 2.060(d).
Mr. Toca's citation to articles 14 and 18 of the International Covenant on Civil and Political Rights (ICCPR) likewise is unavailing. The ICCPR was opened for ratification by resolution of the United Nations General Assembly in 1966. Having obtained a sufficient number of ratifications, it went into force as planned in 1976. The United States Senate ratified the ICCPR in 1992, with a number of reservations, understandings, and declarations. Of course, a properly ratified treaty is binding on the states. U.S. Const., art. IV, § 2, cl. 2.
Article 14 of the ICCPR provides that "[a]ll persons shall be equal before the courts and tribunals" and then sets forth a number of due process protections applicable to criminal prosecutions. Obviously, it does not assist Mr. Toca's attempt to secure an individual exemption from a court rule of general applicability.
Article 18 states:
1. Everyone shall have the right to freedom of thought, conscience and religion. This right shall include freedom to have or to adopt a religion or belief of his choice, and freedom, either individually or in community with others and in public or private, to manifest his religion or belief in worship, observance, practice and teaching.
2. No one shall be subject to coercion which would impair his freedom to have or to adopt a religion or belief of his choice.
3. Freedom to manifest one's religion or beliefs may be subject only to such *211 limitations as are prescribed by law and are necessary to protect public safety, order, health, or morals or the fundamental rights and freedoms of others.
4. The States Parties to the present Covenant undertake to have respect for the liberty of parents and, when applicable, legal guardians to ensure the religious and moral education of their children in conformity with their own convictions.
1976 U.N.T.S. No. 14668, vol. 999, p. 171.
There is scant case law nationally, and none we could find in Florida, interpreting this provision. Probably, this is due in large part to the fact that when ratifying the ICCPR, the Senate declared that "the provisions of Articles 1 through 26 of the Covenant are not self-executing." 138 Cong. Rec. S4781-84 (1992). The Senate stated that the declaration was meant to "clarify that the Covenant will not create a private cause of action in U.S. Courts." S. Exec. Rep., No. 102-23, at 15 (1992). Indeed, the United States Court of Appeals for the Eleventh Circuit has observed that a treaty must be self-executing in order for an individual citizen to have standing to protest a violation of the treaty. United States v. Thompson, 928 F.2d 1060, 1066 (11th Cir.1991). See also United States v. Bent-Santana, 774 F.2d 1545, 1550 (11th Cir.1985); United States. v. Conroy, 589 F.2d 1258 (5th Cir.1979). For this reason, it is doubtful that Mr. Toca has standing to complain that requiring him to sign his filings would violate the ICCPR.
In any event, prior to the ICCPR's ratification by the United States, at least one court interpreted article 18 as furnishing no greater rights or protections than those provided in the First Amendment. Crow v. Gullet, 706 F.2d 856 (8th Cir.1983). Therefore, even if Mr. Toca had standing to enforce the ICCPR, his assertions under article 18 would fare no better than his constitutional claims.

CONCLUSION
For the reasons described, we deny Mr. Toca's motion to accommodate religious beliefs, and we reaffirm our order of March 7, 2002.
ALTENBERND and CASANUEVA, JJ., concur.
NOTES
[1] For administrative simplicity, we enter this published order only in pending cases to which the State is a party, because only the State responded to Mr. Toca's motion. These cases are consolidated only for purposes of this order. In case number 2D02-35, Mr. Toca's motion is denied as moot, since that appeal is no longer pending before this court.
[2] For this proposition he cites the following biblical scriptures: Exodus 20:3 (King James) ("Thou shalt have no other gods before me."); Matthew 5:33-37 (King James) ("Again, ye have heard that it hath been said by them of old time, Thou shalt not forswear thyself, but shalt perform unto the Lord thine oaths: /But I say unto you, Swear not at all; neither by heaven; for it is God's throne: /Nor by the earth; for it is his footstool: neither by Jerusalem; for it is the city of the great King. /Neither shalt thou swear by thy head, because thou canst not make one hair white or black. /But let your communication be, Yea, yea; Nay, nay: for whatsoever is more than these cometh of evil."); James 5:12 (King James) ("But above all things, my brethren, swear not, neither by heaven, neither by the earth, neither by any other oath: but let your yea be yea; and your nay, nay; lest ye fall into condemnation.").
[3] Mr. Toca cites a host of other rules, statutes, and constitutional provisions, none of which are pertinent.
[4] In seeming contradiction of his claim that his religious beliefs prohibit him from signing his filings, Mr. Toca "signs" them by typing the following: "/s/Jesse Toca [] (intended as original signature)." He contends he is entitled to do so under the Florida Electronic Signature Act of 1996. § 668.001-.004, Fla. Stat. (2002). Section 668.004 provides that "[u]nless otherwise provided by law, an electronic signature may be used to sign a writing and shall have the same force and effect as a written signature." Because electronic signatures are authorized by general law, Florida Rule of Judicial Administration 2.060(e)(1)(C) would permit their use "so long as the clerk where the proceeding is pending has the capability of receiving and has obtained approval from the Supreme Court of Florida to accept pleadings and papers with that signature format." But our clerk has neither the capability nor the required approval. Regardless, Mr. Toca's typewritten entry is not an "electronic signature," which the statute defines as "any letters, characters, or symbols, manifested by electronic or similar means, executed or adopted by a party with an intent to authenticate a writing." § 668.003(4), Fla. Stat. (2002) (emphasis added).
[5] The First Amendment to the United States Constitution provides, in pertinent part: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof ...." The Florida Constitution contains the following relevant language in article I, section 3: "There shall be no law respecting the establishment of religion or prohibiting or penalizing the free exercise thereof. Religious freedom shall not justify practices inconsistent with public morals, peace or safety."
[6] One court has suggested that the language of the Florida constitutional provision furnishes less protection of an individual's religious freedom than that guaranteed in the First Amendment. Warner v. City of Boca Raton, 267 F.3d 1223, 1226 n. 3 (11th Cir. 2001).
[7] Recall that Smith, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876, upheld the constitutionality of Oregon's controlled substance laws as against a claimed right to ingest peyote for religious purposes. It is interesting to note that when enacting Florida's Religious Freedom Restoration Act the legislature apparently intended to repudiate Smith in all realms other than the state's controlled substance laws. Section 761.05(4), Florida Statutes (2002), provides that "[n]othing in this act shall be construed to circumvent the provisions of chapter 893." The legislature apparently agreed with the result in Smith but was not confident that the controlled substance laws would withstand the compelling interest test if challenged on religious grounds.
[8] In fact, however, this may not be the case, as discussed in Warner v. City of Boca Raton, 267 F.3d 1223 (11th Cir.2001). In that case, the United States Court of Appeals for the Eleventh Circuit certified to the Florida Supreme Court the question whether Florida's RFRA broadens the definition of what constitutes religiously motivated conduct protected by law "beyond the conduct considered protected by the decisions of the United States Supreme Court." 267 F.3d at 1227.