# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 36765

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2011 Opinion No. 74 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: December 14, 2011 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| CARY WILLIAM WHITE, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Kathryn A. Sticklen, District Judge; Hon. Theresa Gardunia, Magistrate.

District court's intermediate appellate decision affirming the magistrate's denial of motion to dismiss possession of marijuana and paraphernalia charges, <u>affirmed</u>.

Alan Trimming, Ada County Public Defender; Kimberly J. Simmons, Deputy County Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Rosemary Emory, Deputy Attorney General, Boise, for respondent.

_____

GUTIERREZ, Judge

Cary William White appeals from the district court's intermediate appellate decision affirming the magistrate's denial of his motion to dismiss the possession of marijuana and paraphernalia charges against him. Specifically, he contends the district court erred in affirming the magistrate's rejection of his argument that his right to religious freedom under the First Amendment to the United States Constitution, Article 1, § 4 of the Idaho Constitution, and the Idaho Free Exercise of Religion Protected Act (FERPA), Idaho Code §§ 73-401 et seq., was violated by the controlled substances statutes. For the reasons set forth below, we affirm.

## I.

## FACTS AND PROCEDURE

In June 2007, White was stopped by a Boise City police officer because a headlight on his vehicle was out. During the stop, the officer noticed a pill bottle containing a green leafy

1

substance in plain view between the driver's seat and the center console. When questioned, White admitted to smoking marijuana earlier in the day from a pipe, found under his seat. He was arrested and charged with possession of marijuana, I.C. § 37-2732(c), and possession of drug paraphernalia, I.C. § 37-2734A.

White pled not guilty and filed a motion to dismiss the charges based on the contention that Idaho Code §§ 37-2732(c) and 37-2734A violate or substantially burden his right to religious freedom as guaranteed by the First Amendment to the United States Constitution, Article 1, § 4 of the Idaho Constitution, and the FERPA. After a hearing and consideration of White's affidavit and testimony as to his use of marijuana and religious beliefs, the magistrate denied the motion. White entered a conditional guilty plea, preserving his right to appeal the denial of his motion to dismiss. He appealed to the district court, which affirmed the magistrate. White appeals from the district court's decision.

## II.

## ANALYSIS

White contends the district court erred in affirming the magistrate's denial of his motion to dismiss on the basis that the controlled substances statutes under which he was charged violate his right to religious freedom as guaranteed by the federal and state constitutions and the FERPA. On review of a decision of the district court, rendered in its appellate capacity, we review the decision of the district court directly. *State v. DeWitt*, 145 Idaho 709, 711, 184 P.3d 215, 217 (Ct. App. 2008). We examine the magistrate record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. *Id.* If those findings are so supported and the conclusions follow therefrom and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure. *Id.* White advances his claims under both the federal and state constitutions, as well as the FERPA; however, we need only address his FERPA claim.[1]

---

[1] White challenges the enforcement of a neutral law of general applicability, foreclosing any claim under the First Amendment as incorporated against the states. *See Employment Div., Dep't of Human Res. v. Smith*, 494 U.S. 872, 881-82 (1990). In addition, he has failed to indicate that the Idaho Constitution provides broader protection in this area than does the United States Constitution, and therefore, we will not address this argument. *See State v. Bryan*, 145 Idaho 612, 615, 181 P.3d 538, 541 (Ct. App. 2008).

The operative provision of the FERPA, I.C. §§ 73-401, et seq., states, in relevant part:

> 73-402.  Free exercise of religion protected.
> (1)  Free exercise of religion is a fundamental right that applies in this state, even if laws, rules or other government actions are facially neutral.
> (2) Except as provided in subsection (3) of this section, government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability.
> (3) Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person is both:
> (a) Essential to further a compelling governmental interest;
> (b) The least restrictive means of furthering that compelling governmental interest.
> . . . .
> (5)  In this section, the term "substantially burden" is intended solely to ensure that this chapter is not triggered by trivial, technical or de minimus infractions.

Additionally, the Act provides the following definitions in Idaho Code § 73-401:

> (1) "Demonstrates" means meets the burdens of going forward with evidence, and persuasion under the standard of clear and convincing evidence.
> (2)  "Exercise of religion" means the ability to act or refusal to act in a manner substantially motivated by a religious belief, whether or not the exercise is compulsory or central to a larger system of religious belief.
> . . . .
> (5) "Substantially burden" means to inhibit or curtail religiously motivated practices.

This Court exercises free review over the application and construction of statutes. *State v. Reyes*, 139 Idaho 502, 505, 80 P.3d 1103, 1106 (Ct. App. 2003).  Where the language of a statute is plain and unambiguous, this Court must give effect to the statute as written, without engaging in statutory construction. *State v. Burnight*, 132 Idaho 654, 659, 978 P.2d 214, 219 (1999); *State v. Escobar*, 134 Idaho 387, 389, 3 P.3d 65, 67 (Ct. App. 2000).  The language of the statute is to be given its plain, obvious, and rational meaning. *Burnight*, 132 Idaho at 659, 978 P.2d at 219.  If the language is clear and unambiguous, there is no occasion for the court to resort to legislative history, or rules of statutory interpretation. *Escobar*, 134 Idaho at 389, 3 P.3d at 67.  When this Court must engage in statutory construction because an ambiguity exists, it has the duty to ascertain the legislative intent and give effect to that intent. *State v. Beard*, 135 Idaho 641, 646, 22 P.3d 116, 121 (Ct. App. 2001).  To ascertain such intent, not only must the literal words of the statute be examined, but also the context of those words, the public policy

behind the statute and its legislative history. *Id.* It is incumbent upon a court to give an ambiguous statute an interpretation which will not render it a nullity. *Id*. Constructions of an ambiguous statute that would lead to an absurd result are disfavored. *State v. Doe*, 140 Idaho 271, 275, 92 P.3d 521, 525 (2004).

While Idaho has little case law interpreting the FERPA, the legislative history of the statute makes it clear that in adopting the statute the Idaho legislature intended to adopt the "compelling interest test" contained in its federal counterpart, the Religious Freedom Restoration Act (RFRA), which the United States Supreme Court held, in *City of Boerne v. Flores*, 521 U.S. 507, 536 (1997), was invalid as it applied to states. *Statement of Legislative Intent*, 2000 Idaho Sess. Laws 352.[2] Thus, the Ninth Circuit's recent interpretation of the RFRA, where the court referenced the "compelling interest test" in interpreting the RFRA, is instructive:

> To establish a prima facie RFRA claim, a plaintiff must present evidence sufficient to allow a trier of fact rationally to find the existence of two elements. First, the activities the plaintiff claims are burdened by the government action must be an "exercise of religion." Second, the government action must "substantially burden" the plaintiff's exercise of religion. If the plaintiff cannot prove either element, his RFRA claim fails. Conversely, should the plaintiff establish a substantial burden on his exercise of religion, the burden of persuasion shifts to the government to prove that the challenged government action is in furtherance of a "compelling governmental interest" and is implemented by "the least restrictive means." If the government cannot so prove, the court must find a RFRA violation.

*Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1068 (9th Cir. 2008) (internal citations omitted).

White must carry the burden of showing that Idaho's controlled substance statutes substantially burden his exercise of religion. Our review of the requirements, although largely factual in nature, presents mixed questions of fact and law. *See United States v. Meyers*, 95 F.3d 1475, 1482 (10th Cir. 1996). We review the meaning of the FERPA de novo, including the definitions as to what constitutes substantial burden and the exercise of a religious belief, and the

---

[2] However, while the Idaho legislature stated it was adopting the compelling interest test of the RFRA, it departed from the RFRA in a key manner by adopting a much broader definition of "substantially burdens." Thus, while the procedural interpretations of the RFRA are helpful, certain substantive interpretations are inapplicable given the difference in Idaho's statutory language.

ultimate determination as to whether the FERPA has been violated. *See id.* Sincerity is a factual matter and, as with historical and other underlying factual determinations, we defer to the district court's findings, reversing only if those findings are clearly erroneous. *See id.* In addition, determining whether a person's act is substantially motivated by a religious belief requires determinations of fact. *See Toca v. State*, 834 So. 2d 204, 209 (Fla. Dist. Ct. App. 2002) (discussing the issue of whether the defendant was, in truth, motivated by religious belief).[3] Thus, while the issue of whether a belief motivating a particular practice is "religious" is a question of law, the question of what comprises the substantial motivation behind a defendant's conduct, *i.e.*, whether the defendant is motivated by religious (as encompassed by the FERPA) or secular purposes, is a question of fact--to which we defer to the lower court unless its finding is clearly erroneous. *See Coronel v. Paul,* 316 F. Supp. 2d 868, 881-82 (D. Ariz. 2004) (holding that a question of fact existed as to whether Coronel was actually motivated by his religion to

---

[3] RFRA case law yielded three main interpretations of the statute's substantial burden prong: the compulsion test (limiting the applicability of the RFRA to practices that were mandated or compelled by the claimant's religion), the centrality test (requiring a claimant to establish that the burdened practice interfered with a central tenet of religious doctrine), and the religious motivation test (only requiring a demonstration that the government prevented the claimant from engaging in conduct both important to them and motivated by sincere religious belief). *Warner v. City of Boca Raton*, 887 So. 2d 1023, 1033 (Fla. 2004); Steven C. Seeger, Note, *Restoring Rights to Rites: The Religious Motivation Test and the Religious Freedom Restoration Act*, 95 Mich. L.Rev. 1472, 1474-75 (1997). By specifically defining "exercise of religion" as conduct "'substantially motivated' by a religious belief whether or not the exercise is compulsory or central to a larger system of religious belief," the Idaho Legislature clearly codified the latter of the three interpretations in the FERPA. I.C. § 73-401(2).

The religious motivation test is generally considered the broadest of the three, as it allows protection for both central and non-central practices, extends protection to all religious groups, and allows a court to forgo the difficult task of determining the importance of certain religious practices in a claimant's life. *Warner*, 887 So. 2d at 1033; *Coronel v. Paul,* 316 F. Supp. 2d 868, 878-79 (D. Ariz. 2004). However, the test does outline key limitations. First, it requires the claimant to demonstrate that religion principally motivated the activity in question. *Id.* at 879; *Rouser v. White*, 944 F. Supp. 1447, 1455 (E.D. Cal. 1996). Such an inquiry into a person's state of mind, several courts have noted, is not unusual--the law frequently requires proof of a state of mind and the fact that such proof is always circumstantial has not constituted an insurmountable barrier to conviction for specific intent crimes or liability for malicious conduct. *See Rouser*, 944 F. Supp. At 1455. Second, courts are not forced to accept the individual's assertion without further inquiry. *Coronel*, 316 F. Supp. 2d at 879; Seeger, *supra* at 1502 n.153. On the contrary, the court must determine whether a litigant is sincere in her religious objection to a government policy. Seeger, *supra* at 1502 n.153.

participate in another religion's activities or using RLUIPA as a pretext to gain additional privileges to congregate with other inmates).

In denying White's motion to dismiss, the magistrate first analyzed whether White's beliefs are "religious" such that the FERPA is implicated, relying on a test utilized by the Tenth Circuit Court of Appeals in *Meyers*, 95 F.3d 1475, to determine whether a particular set of beliefs is "religious" under the RFRA. However, despite this meticulous analysis under each of the *Meyers* factors, the magistrate made few references to White's beliefs regarding marijuana, specifically in the context of this discussion. The magistrate actually reached the issue, discrete from its *Meyers* analysis, at the conclusion of its analysis, stating:

> While it is apparent to the court that White has strong religious beliefs and that those beliefs are comprised of an assortment of the same beliefs held as "statutorily religious" by the Tenth Circuit Court and other courts of review, White did not articulate a connection between these statutorily legitimized beliefs and his use of marijuana. White describes his spiritual end for the use of marijuana as one that has evolved over the last seven years as a tool, along with breathing arts, martial arts and tai chi, to open his consciousness and mind, and that he has discovered parts of his mind and soul that "after all my education I didn't know were there." White also indicates that it is not just his use of marijuana that achieves this result, but many other things he practices that are related/achieve the same effect.

The magistrate then summarized its findings regarding the nature of White's use of marijuana:

> Ultimately, White's use of marijuana is more a matter of his belief in freedom, rather than a tenet of his religion. In his testimony, White stated "the reason that I am here today is because I believe my freedom and right to use those food groups as I will is a freedom that has been very important and still is very important in my religion, if you took it away would I have a religion, yes I'd still have my faith, I'd still have my practices, the fact that that is a part of it and is very important in my practice is why I'm here today." Further, although White did state that his life is not about marijuana, it certainly seems that his philosophy about marijuana is not that it produces any specific religious or spiritual revelation, but rather that he should be allowed to use it because his use doesn't hurt anybody.

Finally, the magistrate concluded: [4]

> White's personal belief does not elevate the use of marijuana to a religious tenet. White's description of his beliefs, ultimately, appears to be reminiscent of the 60's oft quoted motto, live and let live, combined with his own patchwork of other religions/beliefs with which he chooses to identify. The court is compelled to note that none of the statutory religions enumerated by White uses marijuana as a sacrament. Those religions that use some form of sacrament also have specific rituals associated with the use of the sacrament; no such rituals associated with the use of marijuana were identified by White. Moreover, it seems White has borrowed the ideology of many different religions and has used this ideology to meld into a justification for his use of marijuana. Although it is certainly White's prerogative to believe whatever he wishes[,] it is not however, a legitimization of illegal activity under [the FERPA]. . . .

(Footnotes omitted.)

Ultimately, the magistrate's determinative findings are that while White has some statutorily-recognized religious beliefs, he did not show that his marijuana use *in particular* was "substantially motivated" by those legally-recognized religious beliefs. Thus, we examine whether the magistrate erred, first examining whether the court erred in identifying the substantial motivation behind his marijuana use and then, having identified that motivation, determining whether the court erred in concluding it was not "religious" as used in the statute.

On appeal, White points out the various instances in his testimony when he equated his marijuana use with allegedly religious beliefs. Specifically, he contends that while he mentioned the concept of "freedom" to use food groups in reference to his use of marijuana, the court ignored the greater part of his spiritual use of marijuana, including his testimony that he considered the use of marijuana to be a religious sacrament, akin to the Christian practice of taking communion, as well as to achieve a relaxed and clarified state which he described as religious, that the Christian Bible provides for the use of marijuana, and that there was a spiritual end to his use of marijuana.

---

[4] We note that the magistrate also found the use of marijuana was not mandated by White's faith and was not "central to the religious doctrine of his faith." However, the plain language of the FERPA indicates that a practice protected as an "exercise of religion" need not be compulsory or central to a larger system of religious belief. I.C. § 73-401. Thus, as the district court recognized, the magistrate improperly considered this factor; however, it is apparent that the magistrate's decision was not based entirely on this finding, and therefore, this error is not, on its own, reversible.

In his affidavit in support of his motion to dismiss, White indicated that while he has lived most of his life alcohol and drug-free, he currently smokes marijuana "as an exercise of my right to religious freedom," having done so for seven years. He indicated that while he does not consider himself a "card-carrying" member of any legally-recognized religion, because he believes that religion and religious beliefs are exclusive to each person, he participates in and believes many of the tenets of several recognized organized religious groups, including the Church of Cognitive Therapy, Rastafarianism (which the Ninth Circuit has recognized as involving the use of marijuana as a sacrament), and Native American Medicine.

White averred that he believed "the sacrament of Marijuana is a gift from my creator and I enter into the experience of Marijuana with the intent to bless it." Further, he stated:

> 13. The sacrament of marijuana helps me be more receptive to ideas and the ultimate vision of my religion, by setting aside the mundane, and entering into the profound. It has a particular benefit of relaxing my nervous, over-analytical tendencies, and to enter a relaxed, prayerful, meditative state, so as to receive more clarified vision of knowledge and love.
>
> a. I believe that Marijuana is a powerful tree of life and that the use of Marijuana is healthful. I believe Mankind has forgotten it's [sic] harmonious position with nature. Marijuana helps facilitate awareness of life, the significance of living beings, and the harmony of living things around us.
>
> b. During a ceremony, using marijuana helps bring back the divine connection between all living things.
>
> c. Marijuana is not hurting me; nor is it hurting my neighbor. In fact, I believe the complete opposite.
>
> d. I believe the Holy Bible provides for the use o[f] marijuana, and other plants. I am providing a few examples from the Bible:
>
>> i. "And I will raise up for them a plant of renown, and they shall be no more consumed with [spiritual] hunger in the land, neither bear the shame of the heathen any more." Ezekiel 34:29.
>>
>> ii. "And he showed me a pure river of water of life, clear as crystal, proceeding out of the throne of God and of the Lamb. In the midst of the street of it, and on either side of the river, was there the tree of life, which bare twelve manner of fruits, and yielding her fruit every month; and the leaves of the tree were for the healing nations." Revelations 22:1-2.

White further averred that there are "various sacramental foods" he takes in "honoring the savior" and that "[m]arijuana is taken as a holy sacrament during certain spiritual rituals, honoring the Savior."

At the hearing on his motion to dismiss, White further testified as to his use of marijuana. When asked regarding his indication in the affidavit that he participated in and believed in many of the tenets of the Church of Cognitive Therapy, specifically as to what beliefs those were, he answered:

> [o]ne of [the Church of Cognitive Therapy's] tenants [sic] is to have a group of people come together, partake of a sacrament that they call ganja or marijuana.
>
> They partake of this sacrament with the full intent not to get high, not to get stoned, but to actually open up a part of their mind and consciousness for creative communication.
>
> . . . [A]nd I hold very firmly to this, that the real truth, the real light, the real creative zone for every one of us is the space between thoughts. The thoughts are good, they're powerful; that's what helps make the world go 'round. But, actually, if we can learn to find silence within, we can actually tap into a much higher level of intelligence.
>
> So I had been practicing that for years before I had even heard of the Church of Cognitive Therapy. And it was nice to hear there was actually a group of people that loved to get together, participate in that sacrament with the intent of increasing our intelligence.

He indicated that he had never been a member of this church.

As to the beliefs and tenets of Rastafarianism that he believes in, White testified that while he did not join the church because it would not help his career, he shared the same beliefs with adherents of the religion (as well as Shamanism, Native American Medicine, and the Church of Cognitive Therapy) as to the "sacredness of life" and "using marijuana on occasion as a sacrament to help open our minds and spirits up to one another."

When asked whether he believed that within the contours of his religion he has a "spiritual end" to his use of marijuana, he answered "yes" and indicated that in the last seven years he began "diving seriously into meditative arts, breath arts, tai chi, [and] martial arts" and that marijuana is but one "tool or instrument" in practicing these various things "with intent to open upon [his] consciousness and [his] mind." He then indicated that while he believed there was a spiritual end to his marijuana use, "I do want you to know that it's also a lot of other things that I practice in my life that are related to the use of herbs such as marijuana."

In discussing the comprehensiveness of his beliefs in general and then in regard to marijuana use specifically, White testified:

The comprehensiveness of my belief system is--it's been a long, hard road to even get to this point of not being a judgmental, arrogant, know-it-all religious person. Because I've had so much religion in my life, churches and ministry and theology, I have gone through those phases.

So where I'm at today is, again, to be open, to be a learner, to look for the sacred element in every conversation, in every relation; and even really bad things that people do, to see what else there might be in that.

To bring it down into more specific details, because I believe everything in life is sacred--and that includes plants, that includes certain plants that somebody may smoke or ingest as a food--that those things are sacred. If used correctly, if used with honor, they have a beneficial effect upon whoever is ingesting those.

. . . Paul addressed this in the New Testament. I think its Galatians. He said: Let no man judge you according to what you put in the body but, rather, know that it's what comes out of the mouth that poisons a man, not what goes in.

And so to make that comprehensiveness specific, I mean, I don't want to--my life is not about marijuana; it's about life, it's about my spirit, it's about my music, my art.

But as a citizen of a country that I know is founded on freedom--and even before we got here and did the Constitution, the Native Americans set the precedent of being one with the land.

And that's what my life has really become about the last few years, is I want our culture to get back involved in supporting one another and not judging and especially not taking certain things people do that isn't hurting anybody but making issues of it that then hurts them.

White testified that he has no specific time of day or place as to when and where he engages in marijuana use, but that he participates in various gatherings of people on approximately a weekly basis where music is played and everyone is encouraged to participate through playing, singing, and/or dancing and where marijuana may or may not be used depending on who is there and what the group decides to do. He testified that the frequency of his use varies--he may partake in the "sacrament" daily for several weeks, but there have been times when he has gone several months without partaking. When asked whether there was "something in [his] religion that dictates when you should partake in the sacrament of marijuana," he indicated:

Much like the Christian tenet where we practice the wine and the blood as to honor the death and resurrection of our Savior, the perpetuation [sic] for sins, there is--amongst certain individuals that I fellowship with in my spirituality where we partake of marijuana in a likewise fashion, as a sacrament of honoring our oneness and the sacredness of life.

He indicated the sacrament is not practiced according to a schedule and may be planned or spontaneous.

White testified that he began smoking marijuana seven years ago after he fell off a ladder and was experiencing significant pain and was looking for a more "natural way" to calm down than to take his prescribed pain medication, as well as needing to start taking measures to slow down and to find balance. He testified that he first smoked at his cousin's house, who he knew had long smoked marijuana, and afterwards he felt, for the first time in his life, stillness in his soul, which he described as a "spiritual experience." He further described the experience:

> It's like all of the sudden, I didn't have to think about anything. There was nothing left to think about. I could just breathe and feel me. And it felt wonderful. And I didn't have to have anything to entertain me or to augment that or to complement it.
> So that drew me into a whole different mode of prayer, now what I call meditation, that I had never known up until seven years ago.

White then testified that since that time, he has found he can arrive at the same state through breath exercises, through doing certain energy movements, like tai chi and yoga, but he continues to use marijuana occasionally to help calm the overactive part of his mind and to get back more into the feeling part of his mind.

When asked whether the practice of his religion would change were the court to restrict his use of marijuana and he decided not to use it anymore, White responded:

> No. I think that I've actually found a really good balance and harmony in my use of many substances.
> I also partake in tobacco. And . . . this is one of the reasons I'm here today, is because I believe my freedom and right to use those food groups as I will is a freedom--that has been very important and still is very important in my reli--if you took it away, would I still have a religion? Yes. I'd still have my faith. I'd still have my practices. The fact that that is a part of it and is very important in my practice is why I'm here today--

Considering this evidence as a whole, it becomes apparent that White's motivation (or motivations) for smoking marijuana are not easily, and unequivocally, discernible. On one hand, as he points out, he did testify that he considers his use of marijuana an exercise of his religion, that he takes it as a sacrament akin to Christian communion and in spiritual rituals honoring "the savior," that he believes there is a spiritual end to his marijuana use, and that the Holy Bible provides for such usage. However, just because White has claimed that his impetus for smoking

marijuana is religious, does not make it so for the purposes of the FERPA. As the district court in *Meyers* recognized in regard to the First Amendment and the RFRA, the FERPA could easily be "the first refuge of scoundrels if defendants could justify illegal conduct simply by crying 'religion.'" *United States v. Meyers*, 906 F. Supp. 1494, 1498 (D. Wyo. 1995), *aff'd*, 95 F.3d 1475 (10th Cir. 1996). To establish a free exercise defense, a defendant must first show that his religion is bona fide, *see Wisconsin v. Yoder*, 406 U.S. 205, 215-16 (1972), and, by extension, that his conduct is actually motivated by statutorily-recognized religious beliefs.

As the magistrate found, there was also evidence that White's marijuana use is based on more secular precepts. He testified that he is not a member of any legally-recognized religious groups for which marijuana has been recognized to be a sacrament and that he began smoking marijuana again (after having done so in his youth) with his cousin, who had long smoked marijuana. White testified that he did not begin smoking marijuana as a religious exercise but after he fell off a ladder and was experiencing significant pain and was looking for a more "natural way" to calm down than to take prescription pain medication. He indicated that he needed to "slow down and to find balance" and that marijuana helped him to do so. While describing it as a "spiritual experience," he also indicated that a significant reason he still smokes marijuana is to calm the overactive part of his mind and to get back more into the feeling part of his mind. He indicated that other practices he engages in--such as breathing exercises and "energy movements" such as tai chi and yoga--allow him to arrive at this same state of mind. He also averred the use of marijuana is a "powerful tree of life" and "healthful," and he believes that mankind has forgotten its harmonious position with nature and that marijuana helps facilitate awareness of life, the significance of living beings, and the harmony of living things around us. He averred that his use of marijuana is not hurting either him or his neighbor and testified that he believes everything in life is sacred, including plants, and that if used correctly and with "honor" they have a beneficial effect upon whoever is ingesting those. He also indicated that his use of marijuana is tied to his belief that he is a citizen of a country founded on freedom, that the Native Americans set the precedent of being one with the land, and that for the last few years, his life has been about promulgating his belief that he wants "our culture to get back involved in supporting one another and not judging and especially not taking certain things people do that isn't hurting anybody but making issues of it that then hurts them." He also indicated that one of

the reasons he was there to testify was because he believed in his "freedom and right to use those food groups as I will . . . ."

At least one other court has addressed the asserted religious use of marijuana by defendants with recognized religious beliefs and, somewhat implicitly, addressed the issue of whether a defendant's marijuana use is actually motivated by those beliefs. In *State v. Pedersen*, 679 N.W.2d 368 (Minn. Ct. App. 2004), the defendant was stopped for speeding and the officer discovered approximately 530 grams of marijuana in her vehicle. The defendant filed a motion to dismiss the possession charges, contending enforcement of the statutes as to her violated her freedom of religion ensured by the state constitution's freedom of conscience clause (which essentially mandated application of the compelling interest test). She testified that she smoked marijuana to reduce symptoms from a chronic disease and that her medicinal use of marijuana was consistent with her religious beliefs as a Messianic Jew. Specifically, she noted that she graduated from a ministry training institute and is a teacher of ministry studies, cited to various biblical passages to support her contention that "God gives us every plant bearing seeds inside itself for our consumption and for our health," and stated that Messianic Jews have been using cannabis since the beginning of time for incense, oils, and medicinal purposes. *Id*. at 371-72. The district court denied her motion to dismiss, finding her use of marijuana was not truly connected with her religious beliefs, but rather it was a personal preference. *Id*. at 372.

The Minnesota Court of Appeals affirmed, holding that despite her testimony regarding the religious underpinnings of her marijuana use, there was no evidence marijuana use was tied to her recognized religious beliefs. The court concluded:

> Here, appellant has failed to provide any evidence that establishes a *connection* between the practice of her religion and the medicinal use of marijuana. In our view, her belief in the medicinal use of marijuana is a personal, secular belief, driven more by her medical needs than any philosophical principle or religious tenant.

*Id*. at 376 (emphasis added).

Reviewing the record, we cannot say the magistrate's finding--that the substantial motivation behind White's marijuana was more a matter of his belief in "freedom" and a "live and let live" motto and that his philosophy regarding his usage of the drug is not so much that it produces any specific religious or spiritual revelation, but rather that he should be allowed to use it because his use doesn't hurt anybody--is erroneous. While the evidence was somewhat

13

conflicting with White testifying as to various bases for his actions, it is clear the magistrate was not convinced the religiously-identified bases were the substantial motivation behind White's actions. This is a reasonable interpretation of White's statements where significant portions of his testimony undermined his assertion of the spiritual significance of his use of marijuana. *See Coronel*, 316 F. Supp. 2d at 879 (noting that it was not unreasonable for the State to question Coronel's motives for wanting to engage in certain practices ostensibly on religious grounds). In other words, while White at times couched his marijuana use in a traditionally spiritual, religious manner (e.g., that it was used as a sacrament, citing to the Bible), another theme of his testimony, which the magistrate was entitled to find was the dominant theme, was that he engaged in marijuana use as a way to calm his mind and as an exercise of his beliefs that he should have the "freedom" to engage in such actions--bases for marijuana use that have consistently been found to not be "religious" as utilized in free exercise/RFRA jurisprudence. *See Meyers*, 95 F.3d at 1484 ("Marijuana's medical, therapeutic, and social effects are secular, not religious . . . .") Also, supporting the magistrate's secular interpretation of the motivation behind White's marijuana use is his admission that the impetus behind the commencement of his use of marijuana was that he was seeking a "natural" pain reliever due to a back injury, as well as a way to "calm" his mind, motivations that are clearly not religious.

Taken together, we conclude there was substantial evidence for the magistrate to determine that, while White may have testified in a manner to link his marijuana use to legitimate religious beliefs and practices, this was more of an instance where he has utilized parts of various recognized religions "to meld into a justification for his use of marijuana" and did not, as in *Pedersen*, establish a *link* between any recognized religious beliefs he may have and his marijuana use.[5] Therefore, we conclude there was substantial and competent evidence to support the magistrate's findings of fact that White's marijuana use is not substantially motivated by a

---

[5]    In this regard, White also seems to contend the court was required to accept his testimony regarding the religiosity of his impetus for smoking marijuana over testimony which indicated he may have other reasons for doing so. However, as a finder of fact, the magistrate has the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences. *See State v. Zubizareta*, 122 Idaho 823, 826, 839 P.2d 1237, 1240 (Ct. App. 1992) (stating that the standard applied to a court's factual findings regarding a motion to suppress is similar to that applied to reviewing findings of fact in regard to a motion to dismiss). Thus, to the extent White contends the magistrate erred in failing to choose one interpretation of his testimony over another, he is mistaken.

14

religious belief and, therefore, affirm the district court's decision affirming the magistrate's denial of White's motion to dismiss.

Judge LANSING and Judge MELANSON **CONCUR.**